## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SCOTT NASH,                                          *

                                              *       **Case No.: 8:16-cv-02910-TDC**

                **Plaintiff,**                       *

v.                                                  *

PNC BANK, N.A. D/B/A PNC MORTGAGE                    *

                **Defendant.**                      *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT PNC BANK, N.A.'S MOTION TO DISMISS

September 26, 2016

Daniel J. Tobin (FBN 10338)
Daniel C. Fanaselle (FBN 18753)
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone:  (202) 661-2256
Facsimile:  (202) 661-2299
tobindj@ballardspahr.com
fanaselled@ballardspahr.com

*Attorneys for Defendant PNC Bank, N.A.*

**Table of Contents**

**Page**

I.   INTRODUCTION ................................................................................................... 1

II.  STATEMENT OF FACTS .................................................................................... 2

   A.   Background ..................................................................................................... 2

   B.   The Complaint ................................................................................................ 5

III. STANDARD OF REVIEW .................................................................................. 5

IV.  ARGUMENT ....................................................................................................... 6

   A.   Nash Lacks Standing to Raise Claim Premised on HAMP ............................ 6

   B.   Nash Fails to Plead any Cause of Action Under RESPA ............................... 7

     1.   Nash Fails to Allege Any Violation of Regulation X ............................... 8

     2.   Nash Fails to Allege Any Violation of 12 U.S.C. § 2605(e) ..................... 8

       a.   Nash did not submit a valid QWR ................................................... 9

       b.   Nash did not submit the Letter to PNC's designated address for receiving QWRs ... 10

     3.   Nash has not alleged any damages under RESPA ................................... 11

V.   CONCLUSION ................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adam v. Wells Fargo Bank, N.A.,*
 901 F. Supp. 2d 623 (D. Md. 2012) ....................................................................... 9

*Alston v. Wells Fargo Home Mortg.,*
 2016 U.S. Dist. LEXIS 24147 (D. Md. Feb. 26, 2016) ........................................ 10

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ................................................................................................ 6

*Ayres v. Ocwen Loan Servicing, LLC,*
 129 F. Supp. 3d 249 (D. Md. 2015) ..................................................................... 12

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) ................................................................................................ 6

*Berneike v. CitiMortgage, Inc.,*
 708 F.3d 1141 (10th Cir. 2013) ........................................................................... 11

*Binder v. Weststar Mortg., Inc.,*
 No. 14-7073, 2016 U.S. Dist. LEXIS 90620 (E.D. Pa. July 13, 2016) ................. 13

*Bourdelais v. J.P. Morgan Chase Bank, N.A.,*
 2011 U.S. Dist. LEXIS 35507 (E.D. Va. Apr. 1, 2011) .......................................... 7

*Bravo v. MERSCORP, Inc.,*
 12-CV-884 ENV LB, 2013 WL 1652325 (E.D.N.Y. Apr. 16, 2013) ..................... 12

*Bulmer v. MidFirst Bank, FSA,*
 59 F. Supp. 3d 271 (D. Mass. 2014) ..................................................................... 13

*Corazzini v. Litton Loan Servicing LLP,*
 2010 WL 6787231 (N.D.N.Y. June 15, 2010) ..................................................... 12

*Dides v. Ocwen Loan Servicing, LLC,*
 Civ. No. WMN-12-2989, 2013 WL 2285371 (D.Md. May 21, 2013) ..................... 9

*Gorbaty v. Wells Fargo Bank, N.A., No.,*
 No. 10-3291, 2012 WL 1372260 (E.D.N.Y. April 18, 2012) ............................... 13

*In re Tomasevic,*
 273 B.R. 682 (Bankr. M.D. Fla. 2002) ................................................................. 13

*Ishler v. Chase Home Finance LLC,*
 No. 1:cv-10-2117, 2011 U.S. Dist. LEXIS 17620 (M.D. Pa. Feb. 23, 2011) .......... 7

*Lupo v. JPMorgan Chase Bank, N.A.*,
   2016 U.S. Dist. LEXIS 82264 (D. Md. June 24, 2016) ................................................... 10, 11

*Maheu v. Bank of America, N.A.*,
   No. WDQ-13-1566, 2012 WL 1744536 (D. Md. May 14, 2012) ............................................. 6

*Maxwell v. Fairbanks Capital Corp. (In re Maxwell)*,
   281 B.R. 101 (Bankr. D. Mass. 2002) .................................................................................. 13

*Mbakpuo v. Wells Fargo Bank, N.A.*,
   2015 U.S. Dist. LEXIS 94414 (D. Md. July 20, 2015) ......................................................... 10

*McCray v. Bank of Am., Corp.*,
   2015 U.S. Dist. LEXIS 70657 (D. Md. June 1, 2015) ............................................................. 9

*McLean v. GMAC Mortg. Corp.*,
   595 F. Supp. 2d 1360 (S.D. Fla. 2009) ................................................................................. 13

*Miller v. Chase Home Fin., LLC*,
   677 F.3d 1113 (11th Cir. 2012) ............................................................................................... 7

*Peters v. Bank of Am., N.A.*,
   2015 U.S. Dist. LEXIS 33690 (E.D. Va. Mar. 18, 2015) ...................................................... 11

*Radisi v. HSBC Bank USA*,
   No. 5:11 CV 125-RLV, 2012 WL 2155052 (W.D.N.C. June 13, 2012) ................................ 12

*Roth v. CitiMortgage, Inc.*,
   756 F.3d 178 (2d Cir. 2014) .............................................................................................. 10, 11

*Simon v. Bank of America, N.A.*,
   2010 U.S. Dist. LEXIS 63480 (D. Nev. June 23, 2010) ......................................................... 6

*Sinclair v. CitiMortg., Inc.*,
   519 Fed. Appx. 737 (3d Cir. 2013) ......................................................................................... 6

*Ward v. Sec. Atl. Mortg. Elec. Registration Sys.*,
   858 F. Supp. 2d 561 (E.D.N.C. 2012) .................................................................................. 12

*Westmoreland v. Prince George's Cnty.*,
   No. CIV.A. TDC-14-0821, 2015 WL 996752 (D. Md. Mar. 4, 2015) ..................................... 3

*Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*,
   912 F. Supp. 2d 321 (D. Md. 2012) ....................................................................................... 5

*Wigod v. Wells Fargo Bank, N.A.*,
   673 F.3d 547 (7th Cir. 2012) .................................................................................................. 6

*Williams v. Geithner*,
  2009 WL 3757380 (D.Minn. Nov. 9, 2009)...........................................................................7

*Willis v. Bank of Am., N.A.*,
  No. ELH-13-2615, 2015 U.S. Dist. LEXIS 116732 (D. Md. Sep. 2, 2015) ...........................2

*Willis v. Bank of Am., N.A.*,
  ELH-13-02615, 2014 WL 3829520 (D. Md. Aug. 1, 2014) ................................................12

**FEDERAL STATUTES**

12 U.S.C. § 2601. ..............................................................................................................1

12 U.S.C. § 2605(e).....................................................................................................passim

12 U.S.C. § 2605(f) .....................................................................................................5, 11

28 U.S.C. § 1331 ................................................................................................................5

28 U.S.C. § 1441 ................................................................................................................5

**RULES**

Federal Rule of Civil Procedure 8(a) ...............................................................................5, 6

Federal Rule of Civil Procedure 12(b)(6)....................................................................1, 3, 5, 7

**REGULATIONS**

12 C.F.R. § 1024.36(b)......................................................................................................10

12 C.F.R. § 1024.41 ........................................................................................................5, 8

12 C.F.R. § 1024.41(h).......................................................................................................8

24 C.F.R. § 3500.21(e)(1) ...............................................................................................10

Defendant PNC Bank, N.A. ("PNC"), through counsel, respectfully submits this memorandum in support of its motion to dismiss the Complaint in this matter, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.  __INTRODUCTION__

This action constitutes Nash's misguided attempt to collaterally attack a pending foreclosure action, which was filed by PNC as a result of a default on a mortgage loan that PNC services on behalf of Federal Home Loan Bank Cincinnati (the "Investor"), the investor/owner of the loan.  Nash alleges that after default, and while the foreclosure action was pending, he applied for a loan modification in the hopes of obtaining a modification under the federal Home Affordable Modification Program ("HAMP").  Nash asserts that PNC denied his application on the basis that it could not offer a HAMP modification under the Investor's guidelines.  Nash further alleges that he sent PNC a letter appealing the denial, which also purported to be a Qualified Written Request ("QWR") under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*  In the letter, Nash asserts that PNC failed to identify the Investor restrictions that prohibit the HAMP modification, and also demands that PNC explain the steps it took to "persuade the investor to approve a modification."  *See* Compl. at ¶¶ 12.  Nash alleges that PNC failed to properly respond to the letter, and based thereon, he raises a RESPA claim, demanding statutory damages in the amount of $2000.00, along with "actual damages to be determined at trial," and reasonable attorneys' fees.  *See* Compl. at ¶¶ 15-25, *ad damnum* clause.

The Complaint fails to raise any cause of action against PNC.  As a threshold matter, the Complaint should be dismissed because it improperly attempts to re-cast a claim under HAMP as a RESPA violation.  In any event, the Complaint fails to allege any violation of RESPA, and contrary to Nash's assertion, there is no provision under Regulation X that requires a loan servicer to try to "convince" an investor to offer a loan modification.  Moreover, Nash's allegations related

to the purported QWR fail as a matter of law because: (1) the information demanded in the letter does not relate to servicing under RESPA; (2) the letter was not sent to PNC's designated address for receiving QWRs; and (3) Nash does not allege any actual damages, and has not alleged any basis for his demand for statutory damages.   For these reasons, and as more fully discussed below, the Complaint should be dismissed in its entirety and with prejudice.

## II.   STATEMENT OF FACTS

### A.   Background

On January 31, 2007 Patricia A Nash (hereinafter "Borrower") obtained a mortgage loan in the amount of $417,000.00 (the "Loan") from National City Mortgage, a division of National City Bank ("National City").   *See* Compl. at ¶ 6; Deed of Trust, Ex. A.  The repayment of the Loan was secured by a deed of trust (the "Deed of Trust") on the real property located at 8800 Laurel Valley Lane, Montgomery Village, MD 20886 (the "Property").   *See* Deed of Trust, attached hereto as Exhibit A.[1]  The Deed of Trust is recorded among the land records of Montgomery County at Liber 33792, folio 290.   *See id.*   Under the terms of the Deed of Trust, Borrower agreed that the trustee would have the power to sell the Property upon default.   *See* Deed of Trust, Ex. A at ¶ 22.

Subsequently, Borrower defaulted under the terms of the Deed of Trust by failing to make the payment due October 1, 2014, and each month thereafter.   *See* Notice of Intention to

---

[1]   The Court may consider the Deed of Trust for purposes of ruling on this Motion to Dismiss because it is recorded in the Clerk's Office for Montgomery County, Maryland, and thus, constitutes a public record that is subject to judicial notice.   *See Willis v. Bank of Am., N.A.*, No. ELH-13-2615, 2015 U.S. Dist. LEXIS 116732, at *12 n.13 (D. Md. Sep. 2, 2015) (court could take judicial notice of an assignment of deed of trust attached to motion to dismiss, and could consider it without converting the motion to a motion for summary judgment, because the assignment was recorded in the Baltimore City land records, and therefore, was a public record) (citing *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) ("[A] court may properly take judicial notice of matters of public record . . . .").

Foreclose, attached hereto as Exhibit B.  At some point, Borrower passed away, and on February 9, 2015 Nash was appointed as the personal representative of Borrower's estate.  *See* Compl. at ¶ 6; Estate Record for Borrower's Estate, attached hereto as Exhibit C.[2]

Thereafter, as a consequence of the default remaining uncured, the Substitute Trustees filed an order to docket in the Circuit Court for Montgomery County, Maryland (the "Circuit Court") on May 21, 2015 (the "Order to Docket"), thereby commencing a foreclosure action, No. 405281-V (the "Foreclosure Action").  True and correct copies of the Order to Docket, and the docket report for the Foreclosure Action, are attached hereto as Exhibits D and E respectively.[3] On September 1, 2015, Nash filed a Request for Mediation in the Foreclosure Action, *see* FC Dkt., Ex. E, Entry No. 14, and mediation was scheduled for October 15, 2015.  On October 15, 2015, foreclosure mediation was held and was attended by all parties.  *See* Foreclosure Agreement to Mediate and Foreclosure Mediation Checklist attached hereto as Exhibit E.[4] Thereafter, the Administrative Law Judge filed a Mediation Report indicating that no agreement had been reached.  *See* FC Dkt., Ex. E, Entry No. 15.

On or about March 23, 2016, Nash allegedly submitted documents to PNC, to be reviewed for a loan modification.  *See* Compl. at ¶ 23.  On or about April 22, 2016, PNC sent a letter requesting additional documents needed to consider Nash for a loan modification, and on May 5, 2016, Nash alleges that he submitted the requested documents.  *See* Compl. at ¶¶ 9-10.

---

[2]     *See supra* note 1.

[3]     The Court may properly consider the Foreclosure Action and the pleadings filed therein because they are matters of public record that are not subject to reasonable dispute.  *See Westmoreland v. Prince George's Cnty.*, No. CIV.A. TDC-14-0821, 2015 WL 996752, at *7 (D. Md. Mar. 4, 2015) ("court may take judicial notice of documents from other court proceedings and other matters of public record in conjunction with a Rule 12(b)(6) motion without converting it to a motion for summary judgment.")  *See supra* note 2.

[4]     *See supra* note 2.

On June 3, 2016, PNC sent Nash a letter, advising that it was unable to offer a modification.  *See* Def. Mot. at Ex. 1.  The letter explained the reasons for the denial, stating, in relevant part:

> We have completed our review of your hardship assistance request under the Making Home Affordable (MHA) Program.  However, your assignee or mortgage owner, FEDERAL HOME LOAN BANK CINCINNATI, cannot approve your request for the assistance for the:
>
> - Making Home Affordable HAMP Modification because we service your loan on behalf of an investor or group of investors that has not given us the contractual authority to modify your loan for this alternative to foreclosure option.
>
> - Making Home Affordable HAMP Tier II Modification because we service your loan on behalf of an investor or group of investors that has not given us the contractual authority to modify your loan for this alternative to foreclosure option.

*See id.*  The letter further explained that Nash was reviewed for a number of additional loss mitigation options, but was denied, either because: (1) Nash did not meet the requisite guidelines, (2) the investor did not give PNC authority to modify the loan pursuant to the relevant option, (3) PNC was unable to validate Nash's income in conjunction with the investor's guidelines, or (4) Nash did not ask to be reviewed for the option.  *See id.*

On June 14, 2016, Nash sent PNC a letter appealing the denial, which also purported to be a QWR under RESPA (Nash's "Letter").  The Letter raised "questions relating to the steps that PNC undertook to persuade the investor to approve a modification," and alleged that PNC is required to do so as a participant in HAMP.  *See* Compl. ¶ 12, Ex 2.  On June 20, 2016, PNC send a letter in response to Nash's Letter, noting that PNC had reviewed the appeal request, and that no further loss mitigation options were available.  *See* Def. Mot. Ex. 3.

On June 30, 2016, Nash filed a Motion to Stay or Dismiss the Foreclosure Action, asserting that the Foreclosure Action should be stayed and dismissed due to PNC's denial of his

loan modification application.  *See* FC Dkt., Ex. E, at Entry No. 36.[5]  On the same date, Nash filed the subject Complaint in the District Court for Montgomery County, Maryland.  On August 18, 2016, PNC removed the action to this Court pursuant to 28 U.S.C. §§ 1331 and 1441.

### B.    The Complaint

The Complaint is entirely premised on Nash's assertion that PNC failed to properly respond to his Letter.  Based thereon, Nash raises a single cause of action under RESPA, but asserts that two provisions were violated: (1) the servicing requirements of Regulation X, 12 C.F.R. § 1024.41, which can be enforced under 12 U.S.C. § 2605(f); and (2) the QWR requirements under 12 U.S.C. § 2605(e).  *See* Compl. at ¶¶ 20-23.  Nash alleges that PNC violated Regulation X by failing to identify the investor restrictions that prohibit a loan modification, *see* Compl. at ¶¶ 19-20, 22, and asserts that the QWR provision was violated because PNC failed to answer "servicing-related questions" regarding what efforts were undertaken to persuade the investor to approve a HAMP loan modification.  *See* Compl. at ¶¶ 21, 23-24.  Nash demands statutory damages in the amount of $2,000.00, along with actual damages in an amount "to be determined at trial," and reasonable attorneys' fees.  *See* Compl. at *ad damnum* clause.

## III.   STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Federal Rule of Civil Procedure 8(a).  *See Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.,* 912 F. Supp. 2d 321, 331 (D. Md. 2012).  Rule 8(a) requires a complaint to contain a "short and plain statement of the claim

---

[5]     On August 15, 2016, a hearing was held on Nash's Motion to Stay and Dismiss, and on August 17, 2016 the Circuit Court entered an Order denying the Motion, and directing that the Substitute Trustees may proceed to schedule the foreclosure sale.  *See* FC Dkt., Ex. E at Entry Nos. 44-45.

showing that the pleader is entitled to relief."  As the Supreme Court explained in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), this requirement:

> demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.

*Id.* at 687 (internal citations and quotations omitted).

To satisfy the requirements of Federal Rule 8, a complaint must allege "sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, (2007)).  A claim lacks plausibility where the plaintiff alleges only the "sheer possibility" of misconduct.  *Id.*  Dismissal of a complaint is warranted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Twombly*, 550 U.S. at 570.

## IV.  ARGUMENT

### A.   Nash Lacks Standing to Raise Claim Premised on HAMP

As a threshold matter, the Complaint should be dismissed because the RESPA claim merely re-casts a claim under HAMP.  The federal courts have consistently held that Congress did not provide for any private cause of action under HAMP.  *See Sinclair v. CitiMortg., Inc.*, 519 Fed. Appx. 737, 739 (3d Cir. 2013); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 559 n.4 (7th Cir. 2012) (noting that "HAMP does not create a private federal right of action for borrowers against servicers"); *Maheu v. Bank of America, N.A.*, No. WDQ-13-1566, 2012 WL 1744536, at *8 (D. Md. May 14, 2012) ("It is well-settled that borrowers do not have a private right of action under [the Home Affordable Modification Program]"); *Simon v. Bank of America, N.A.*, 2010 U.S. Dist. LEXIS 63480, at *10 (D. Nev. June 23, 2010) ("district courts have consistently held that the Home Affordable Modification Program does not provide borrowers

with a private cause of action against lenders for failing to consider their application for loan modification, or even to modify an eligible loan"); *Ishler v. Chase Home Finance LLC*, No. 1:cv-10-2117, 2011 U.S. Dist. LEXIS 17620, at *12-13 (M.D. Pa. Feb. 23, 2011) (HAMP makes no guarantees that loan would be permanently modified which prohibited plaintiff from stating a claim for fraud); *Miller v. Chase Home Fin., LLC*, 677 F.3d 1113 (11th Cir. 2012) (holding that HAMP does not provide a private cause of action and as a result the plaintiff lacked standing to pursue his breach of contract, breach of implied duty of good faith and fair dealing, and promissory estoppel claims because they were premised on HAMP). Moreover, it is well-settled that borrowers do not have a right to a loan modification under HAMP. *See, e.g. Williams v. Geithner*, 2009 WL 3757380, at *7 (D.Minn. Nov. 9, 2009) ("Plaintiffs do not have a legitimate claim of entitlement to a loan modification"); *Bourdelais v. J.P. Morgan Chase Bank, N.A.*, 2011 U.S. Dist. LEXIS 35507 at *3 (E.D. Va. Apr. 1, 2011) (noting that courts across the country have "universally rejected" claims by homeowners that they were entitled to modifications under HAMP because "HAMP does not create a private right of action for borrowers against lenders and servicers"). Here, the Complaint seeks to compel PNC to offer a HAMP modification, asserting that PNC is required to take action to "convince" the Investor to waive its restrictions. *See* Compl. Ex. 2. Nash lacks standing to raise any such claims under HAMP, and as such, the Complaint should be dismissed in its entirety, and with prejudice.

## B. Nash Fails to Plead any Cause of Action Under RESPA

Moreover, even if Nash were permitted to raise these HAMP related claims, his allegations, related to the appeal under Regulation X and the purported QWR under § 2605(e), fail to allege any cause of action under RESPA. This constitutes an additional and separate basis for dismissal under Rule 12(b)(6).

### 1.        Nash Fails to Allege Any Violation of Regulation X

Nash fails to allege any violation of the mortgage servicing requirements under Regulation

X, 12 C.F.R. § 1024.41.  The regulation contains various mortgage servicing and loss mitigation

requirements, and provides for an appeal process of a servicer's loss mitigation determination.

*See* 12 C.F.R. § 1024.41(h).  Specifically, § 1024.41(h) provides that if a borrower appeals a

servicer's denial of his or her loss mitigation application, the servicer shall conduct an

independent evaluation, and shall, within 30 days "provide a notice to the borrower stating the

servicer's determination of whether the servicer will offer the borrower a loss mitigation option

based upon the appeal […] [a] servicer's determination under this paragraph is not subject to any

further appeal." *See id.*  Here, PNC responded to the Letter within 30 days, and stated that:

> an independent appeal review determined that the information provided in
> your complete Loss Mitigation Application was correctly evaluated for a
> loan modification according to PNC rules and your investor provided
> guidelines […] [w]e are unable to make any further options available to
> you at this time.

*See* Compl. Ex. 3.  The Regulation does not require that a servicer identify the applicable investor

restrictions that prohibit a loan modification.  To the contrary, § 1024.41(a) explicitly provides

that "[n]othing in § 1024.41 should be construed to create a right for a borrower to enforce the

terms of any agreement between a servicer and the owner or assignee of a mortgage loan,

including with respect to the evaluation for, or offer of, any loss mitigation option."  Accordingly,

Nash does not identify any deficiency in PNC's response to his Letter, and as such, the Complaint

should be dismissed.

### 2.        Nash Fails to Allege Any Violation of 12 U.S.C. § 2605(e)

The Complaint also fails to allege any violation of RESPA's QWR provision under 12

U.S.C. § 2605(e).  In order to state a claim under this section, a borrower must demonstrate (1) he

sent a written request that meets RESPA's definition of a QWR, (2) the servicer failed to

adequately respond under § 2605(e) within the statutory period, and (3) he suffered actual

damages as a result of the violation.  *McCray v. Bank of Am., Corp.*, 2015 U.S. Dist. LEXIS

70657, *20-21 (D. Md. June 1, 2015).  Nash fails to satisfy any of these requirements.

### a.      Nash did not submit a valid QWR

First, the allegations of the Complaint, and the documents attached thereto, establish that

Nash did not submit a valid QWR.  RESPA defines a QWR as:

> a written correspondence, other than notice on a payment coupon
> or other payment medium supplied by the servicer, that—(i)
> includes, or otherwise enables the servicer to identify, the name
> and account of the borrower; and (ii) includes a statement of the
> reasons for the belief of the borrower, to the extent applicable, that
> the account is in error or provides sufficient detail to the servicer
> regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).  Thus, to qualify as a QWR, the correspondence must: (1) include

sufficient information to identify the loan, (2) request information related to the servicing of the

loan, and (3) include a statement for the reasons the borrower believes the account is in error.  *See*

*Adam v. Wells Fargo Bank, N.A.,* 901 F. Supp. 2d 623, 630 (D. Md. 2012); *see also Dides v.*

*Ocwen Loan Servicing, LLC*, Civ. No. WMN-12-2989, 2013 WL 2285371, at *2 (D.Md. May 21,

2013) ("the permissible scope of [a QWR] under RESPA is limited to information related to the

servicing of loans, specifically the receipt of payments from a borrower and the making of

payments of principal and interest").

Here, the Letter does not request any information related to the servicing of the Loan, and

rather, raises various allegations related to PNC's denial of his loan modification application,

including assertions that:

> [(1)] [PNC] failed to identify and provide copies of [the investor]
> restrictions […;] [(2)] the denial letter does not note any efforts
> made by PNC to convince [the investor] to waive its restrictions
> […;] [and (3)] insofar as PNC denied [Nash] for repayment and
> forbearance plans, PNC's given reasons are in error

9

*See* Compl. Ex. 2.  This correspondence does not qualify as a QWR because it fails to identify any reasons why Nash believed the account was in error, and because the allegations related to PNC's loss mitigation procedures are not valid inquiries under RESPA.  *See Alston v. Wells Fargo Home Mortg.*, 2016 U.S. Dist. LEXIS 24147, *42 (D. Md. Feb. 26, 2016) (holding that requests were not valid where they went "beyond the receiving and posting of payments."); *Mbakpuo v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 94414, *28 (D. Md. July 20, 2015) ("requests for a loan modification did not relate to the servicing of a loan because they did not relate to Wells Fargo receiving any scheduled periodic payments from a borrower pursuant to the terms of a loan […] a loan modification is a request to alter the terms of a loan […] [borrower] has cited no authority for the proposition that a request for a loan modification, or the approval or denial thereof, relates to the servicing of a loan.").  Thus, Nash has not alleged that he submitted a valid QWR to PNC.

> **b.    Nash did not submit the Letter to PNC's designated address for receiving QWRs**

Even if one were to set aside the deficiencies noted above – for the sake of argument only – Nash's allegations cannot sustain a claim under RESPA because he did not submit the Letter to PNC's designated address for QWRs.  If a servicer designates an exclusive address to receive QWRs, as permitted by RESPA's implementing Regulation X, *see* 24 C.F.R. § 3500.21(e)(1)); 12 C.F.R. § 1024.36(b),[6] then a borrower must send his requests to that address for the correspondence to qualify as a QWR.  *See Lupo v. JPMorgan Chase Bank, N.A.*, 2016 U.S. Dist. LEXIS 82264, *15 (D. Md. June 24, 2016) ("If a servicer complies with the notice requirements

---

[6]      Regulation X permits, but does not require, a servicer to "establish a separate and exclusive office and address for the receipt and handling of qualified written requests." 24 C.F.R. § 3500.21(e)(1). Designation of such an address aids servicers in meeting RESPA's deadlines when responding to potentially detailed inquiries from borrowers. *Roth v. CitiMortgage, Inc.*, 756 F.3d 178, 181 (2d Cir. 2014).

for designating a QWR address, a letter sent to a different address is not a QWR, even if an employee at that address (who may not have training in RESPA compliance) in fact responds to that letter.") (internal citations and formatting omitted); *Peters v. Bank of Am., N.A.*, 2015 U.S. Dist. LEXIS 33690, *5 (E.D. Va. Mar. 18, 2015) ("If a servicer establishes a designated QWR address, then the borrower must deliver its request to that office in order for the inquiry to be a qualified written request […] Failure to send the [alleged] QWR to the designated address for the receipt and handling of QWRs does not trigger the servicer's duties under RESPA […] When an alleged QWR fails to meet the requirements of RESPA and its implementing regulation, it amounts to nothing more than general correspondence between a borrower and servicer.") (citing *Roth v. CitiMortgage, Inc.,* 756 F.3d 178, 181 (2d Cir. 2014); *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1149 (10th Cir. 2013)).

Here, Nash failed to send the Letter to PNC's designated address for receiving QWRs, which is clearly identified on PNC's denial letter as PO Box 8807, Dayton, Ohio 45401. *See* Compl. Ex. 1.[7] Rather, Nash sent the Letter to an address in Miamisburg, Ohio. *See* Compl. Ex. 2. Accordingly, the Letter did not constitute a QWR, and PNC had no duty to respond to the same. *See Lupo*, 2016 U.S. Dist. LEXIS 82264 at *15.

### 3.        Nash has not alleged any damages under RESPA

Finally, even if Nash were able to allege that PNC committed a RESPA violation, the claim should be dismissed because he has not alleged that he incurred any damages. In order to sustain a claim under RESPA, a plaintiff must allege either a pecuniary loss attributable to the RESPA violation, or may seek statutory damages where the servicer has engaged in a pattern or practice of noncompliance. *See* 12 U.S.C. § 2605(f). Failure to allege actual damages is fatal to a

---

[7]   Each page of PNC's letter states: "[t]o request information or notify us of an error regarding your account, please send a written request/notice to PNC Mortgage, PO Box 8807, Dayton, OH 45401-8807." *See* Compl. Ex. 1.

claim under RESPA.  *See Corazzini v. Litton Loan Servicing LLP,* 2010 WL 6787231, at *12 (N.D.N.Y. June 15, 2010) ("[T]he courts have consistently dismissed complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant caused damages to the plaintiff."); *Ward v. Sec. Atl. Mortg. Elec. Registration Sys.*, 858 F. Supp. 2d 561, 575 (E.D.N.C. 2012)  ("Plaintiffs nevertheless do not state a claim under 12 U.S.C. § 2605(e) as Plaintiffs fail to allege any pecuniary loss attributable to the RESPA violation."); *Bravo v. MERSCORP, Inc.*, 12-CV-884 ENV LB, 2013 WL 1652325, at *3 (E.D.N.Y. Apr. 16, 2013) ("Even if the communication were a QWR, defendants assert correctly that plaintiff fails to state a claim, because he pleads neither actual damages flowing from the charged RESPA violation nor facts showing a pattern or practice of noncompliance with the QWR provisions of RESPA warranting statutory damages").

Here, Nash does not specify any damages resulting from the alleged RESPA violation, and rather, demands "actual damages to be determined at trial," along with statutory damages in the amount of $2,000.  *See* Compl. at ad damnum clause.  This fails to allege any actual damages under RESPA, because it fails to allege that Nash incurred any damages as a result of PNC's alleged failure to identify the investor restrictions and/or attempt to convince the investor to waive said restrictions.  *See Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 266 (D. Md. 2015) ("Plaintiffs do not identify how these damages flowed directly from Ocwen's failure to respond to the QWRs [ ] Such conclusory allegations are insufficient to establish actual damages under RESPA (citing *Willis v. Bank of Am. Corp.*, ELH-13-02615, 2014 WL 3829520, at *31 (D. Md. Aug. 1, 2014) (conclusory assertion that actual damages arose from the failure to adequately respond to a letter was not sufficient to establish actual damages); *Radisi v. HSBC Bank USA*, No. 5:11 CV 125-RLV, 2012 WL 2155052, at *5 (W.D.N.C. June 13, 2012)

("Plaintiff's assertion of damages without any supporting facts as to how he was damaged by the failure to respond to the QWR's is insufficient to establish a claim for violation of RESPA.").

Moreover, Nash is not entitled to any statutory damages, because the single letter he relies on is not sufficient to establish a pattern or practice of noncompliance.  See *Bulmer v. MidFirst Bank, FSA*, 59 F. Supp. 3d 271, 279 (D. Mass. 2014) ("the only RESPA violation Plaintiff has supported is Defendant's failure to adequately respond to one written QWR.  Simply put, that one failure is not enough to demonstrate a pattern or practice of noncompliance for purposes of statutory damages.") (citing *Maxwell v. Fairbanks Capital Corp. (In re Maxwell)*, 281 B.R. 101, 123 (Bankr. D. Mass. 2002) (holding that "just two" RESPA violations does not establish a pattern or practice)); *see also Binder v. Weststar Mortg., Inc.*, No. 14-7073, 2016 U.S. Dist. LEXIS 90620, at \*42-43 (E.D. Pa. July 13, 2016) ("Numerous courts have held that a plaintiff cannot properly establish entitlement to additional statutory damages based upon a single violation of [RESPA].") (citing *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-3291, 2012 WL 1372260, at \*5-6 (E.D.N.Y. April 18, 2012) (two violations of RESPA insufficient to establish a pattern or practice under § 2605(f)(1)(B)); *McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1365-66 (S.D. Fla. 2009) (finding defendant's insufficient response to two QWRs insufficient to establish 'pattern or practice'); *In re Tomasevic*, 273 B.R. 682 (Bankr. M.D. Fla. 2002) (failure to respond to one QWR did not amount to 'pattern or practice' under the statute). Accordingly, Nash has not alleged any facts to support a finding of a "pattern or practice" of noncompliance, and as such, he has failed to allege any damages under RESPA.  Therefore, the Complaint should be dismissed in its entirety and with prejudice.

**V.**     **CONCLUSION**

For all of the foregoing reasons, Defendant PNC Bank, N.A. respectfully requests that the Court dismiss the Complaint filed by Plaintiff Scott Nash with prejudice.

September 26, 2016                              /s/ *Daniel J. Tobin*
                                               Daniel J. Tobin (FBN 10338)
                                               Daniel C. Fanaselle (FBN 18753)
                                               BALLARD SPAHR LLP
                                               1909 K Street NW, 12th Floor
                                               Washington, DC 20006
                                               Telephone:  (202) 661-2256
                                               Facsimile:  (202) 661-2299
                                               tobindj@ballardspahr.com
                                               fanaselled@ballardspahr.com
                                               *Attorneys for Defendant PNC Bank, N.A.*

14