**EXHIBIT D**

# NOTICE OF FORECLOSURE ACTION

### [Owner-Occupied - Preliminary Loss Mitigation Affidavit]

This Notice is Required by Maryland Law (Real Property Article, §7-105.1, Annotated Code of Maryland).

> **A foreclosure sale of this property may occur as soon as <u>68</u> days from this notice if you do not respond**

If you own and live in this home, you may qualify for alternatives to foreclosure, but you must act quickly.

## We have included:

- **Preliminary Loss Mitigation Affidavit** – this is a legal document completed by your mortgage company (sometimes referred to as servicer) explaining that they have not completed an evaluation of your loan for possible alternatives to foreclosure and why.
- **Loss Mitigation Application** – this is the application that your mortgage company will review to see if you qualify for alternatives to foreclosure. If you need help completing this form, please contact a housing counselor (information below).
- **Addressed Envelope to mail the Loss Mitigation Application.**

### YOU ARE NOT ALONE. THERE ARE FREE RESOURCES AVAILABLE IN MARYLAND.

## TO ACCESS FREE HOUSING COUNSELING SERVICES, CALL THE MARYLAND HOPE HOTLINE AT 1-877-462-7555 OR GO TO <u>WWW.MDHOPE.ORG</u>

**What happens if you do nothing?**
In 28 days or more, you will receive a **Final Loss Mitigation Affidavit**, which will include a form to request **FORECLOSURE MEDIATION**.

- You qualify for foreclosure mediation only after the Final Loss Mitigation Affidavit has been filed with the court.
- You have only 25 days after the mailing date of the final loss mitigation affidavit to request foreclosure mediation so it is important that you continue to open your mail.

**Beware of anyone offering to "save" your home or requesting an upfront fee before providing assistance.** This is illegal in the State of Maryland. *If you believe you have been a victim of a scam, please contact Maryland's office of the Commissioner of Financial Regulation by calling 410-230-6077 or visiting* http://www.dllr.state.md.us/finance/.

*BEFORE YOU MAIL THE LOSS MITIGATION APPLICATION, MAKE A COPY FOR YOUR RECORDS*

BWW#191945

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| Carrie M. Ward, et al. | * |
| 6003 Executive Blvd., Suite 101 | * |
| Rockville, MD 20852 | * |
|     Substitute Trustees | * |
|     Plaintiffs | * |
| vs. | *     Case No. |
| PATRICIA A. NASH | * |
| 8800 Laurel Valley Lane | * |
| Montgomery Village, MD  20886 | * |
| | * |
|     Defendant(s) | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PRELIMINARY LOSS MITIGATION AFFIDAVIT

My name is _____**Luann Jones**_____. I am authorized to act on behalf of the secured party who is the holder of the beneficial interest in the mortgage or deed of trust which is secured by property at the address listed above. The information in this affidavit is derived from records of the secured party that were made at or near the time of the occurrence of the matters set forth below by, or from information transmitted by, a person with knowledge of those matters. These records were produced and/or maintained in the course of the regularly conducted activity of the secured party as a regular practice of the secured party, and I state the following:

The mortgage loan that is the subject of this foreclosure action may be eligible for loss mitigation and [check all statements that apply]:

_____      The loan is currently under loss mitigation analysis, but the analysis has not yet been completed.

_____      The secured party or a representative of the secured party has not been able to obtain all documentation and information necessary to conduct the loss mitigation analysis.

     Required additional documentation to complete loss mitigation analysis [list documents required]:_____

_____

_____

X      The secured party or a representative of the secured party has not been able to establish communication with the borrower.

X      Other _Property is owner occupied._

     I solemnly affirm under penalties of perjury and upon personal knowledge based on review of the records described herein or attached hereto that the contents of this affidavit are true.

_Luann Jones_            _April 22, 2015_

Signature of Affiant                       Date

**Luann Jones**    Authorized **Signer**

Print Name and Title of Affiant

3232 Newmark Drive Miamisburg, OH 45342

PNC Customer Service: 800-523-8654

PNC Customer Service Fax: (855)-363-2738

PNC Customer Service Email: Customer Inquiry@pncmortgage.com

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| Carrie M. Ward | * |
| Howard N. Bierman | * |
| Jacob Geesing | * |
| Pratima Lele | * |
| Joshua Coleman | * |
| Richard R. Goldsmith, Jr. | * |
| Ludeen McCartney-Green | * |
| Jason Kutcher | * |
| Nicholas Derdock | * |
| Elizabeth C. Jones | * |
| | * |
| 6003 Executive Blvd., Suite 101 | * |
| Rockville, MD 20852 | * |
|     Substitute Trustees | * |
|     Plaintiffs | * |
| vs. | * |
| PATRICIA A. NASH | *    Case No. |
| 8800 Laurel Valley Lane | * |
| Montgomery Village, MD 20886 | * |
| | * |
|     Defendant(s) | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## INSTRUCTIONS REGARDING LOSS MITIGATION APPLICATION

TO THE DEFENDANT(S):

    Please complete the enclosed loss mitigation application by following the instructions contained therein and return the completed application in the enclosed envelope addressed to:

BWW Law Group, LLC
6003 Executive Blvd., Suite 101
Rockville, MD 20852

Thank you.

Date: _5/20/2015_

Respectfully submitted,

_Elizabeth C. Jones_

6003 Executive Blvd., Suite 101
Rockville, MD 20852
Phone: (301) 961-6555
Fax: (301) 961-6545
Email: Courts@bww-law.com

# THE MARYLAND
# FORECLOSURE PROCESS AND TIME LINE
### [Owner-Occupied - Mortgage Loan Default - No Offer of Prefile Mediation]

**A Notice of Intent to Foreclose** is enclosed with this document. In this Notice you will find specific information about your mortgage, an application for loss mitigation, and instructions to complete the application. **THIS IS NOT YET A FORECLOSURE FILING.** A foreclosure action, called an order to docket or complaint to foreclose (the "OTD"), may not be filed against you in court until at least 45 days after this Notice was mailed. The OTD must be filed in Circuit Court in order to move forward with foreclosure proceedings.

The OTD cannot be filed until your loan is 120 days past due, and you have been sent this Notice.

You will receive a copy of the OTD and it will include one of the following affidavits:

1. **Preliminary Loss Mitigation Affidavit, which** will be filed with the OTD if the mortgage company has not started or completed the review of your loan for foreclosure alternatives known as loss mitigation. An application for loss mitigation will be included in the OTD. **Complete and return the application immediately;** OR

2. **Final Loss Mitigation Affidavit, which** will be filed with the OTD if the mortgage company believes it has no available alternatives to foreclosure. This affidavit will come with a **"Request for Postfile Foreclosure Mediation," an application, and instructions. You have only 25 days to request foreclosure mediation after the mailing date of these documents.** To request foreclosure mediation you must send the completed application with a non-refundable fee of $50 to the Circuit Court.

\* If your order to docket includes a Preliminary Loss Mitigation Affidavit, **open all future mail** because you may receive a Final Loss Mitigation Affidavit in as soon as 28 days.

**Foreclosure Mediation:**
You will have the opportunity to request foreclosure mediation after you receive the Final Loss Mitigation Affidavit. Foreclosure mediation is a process that allows you, a representative from your mortgage company, and a neutral third party mediator from the Maryland Office of Administrative Hearings to meet and discuss alternatives to foreclosure. The goal of foreclosure mediation is to help you avoid foreclosure. At mediation, you and your mortgage company may agree to an option to avoid foreclosure. However, making a request for foreclosure mediation does not guarantee a loan modification or other relief.

### TO ACCESS FREE HOUSING COUNSELING SERVICES,
### CALL THE MARYLAND HOPE HOTLINE AT
### 1-877-462-7555 OR GO TO WWW.MDHOPE.ORG

## HOPE Housing Counselors Network

| ORGANIZATION | JURISDICTION | ZIP | PHONE NUMBER | WEB ADDRESS |
|---|---|---|---|---|
| Allegany County HRDC | Allegany | 21502 | 301-777-5970 | www.alleganyhrdc.org (http://www.alleganyhrdc.org) |
| Anne Arundel County Economic Opportunity Committee, Inc* | Anne Arundel | 21401 | 410-626-1900 | www.aaceoc.com (http://www.aaceoc.com) |
| Arundel Community Development Services, Inc. | Anne Arundel | 21401 | 410-222-7600 | www.acdsinc.org (http://www.acdsinc.org) |
| Belair Edison Neighborhoods, Inc. | Baltimore City | 21213 | 410-485-8422 | www.belair-edison.org (http://www.belair-edison.org) |
| Druid Heights Community Development Corp. | Baltimore City | 21217 | 410-523-1350 | www.druidheights.com (http://www.druidheights.com) |
| Garwyn Oaks Northwest Housing Resource Center | Baltimore City | 21216 | 410-947-0084 | www.go-northwesthrc.org (http://www.go-northwesthrc.org) |
| Neighborhood Housing Services of Baltimore | Baltimore City | 21231 | 410-327-1200 | www.nhsbaltimore.org (http://www.nhsbaltimore.org) |
| Park Heights Renaissance, Inc* | Baltimore City | 21215 | 410-664-4890 | www.phrmd.org (http://www.phrmd.org) |
| Southeast Community Development Corporation* | Baltimore City | 21224 | 410-342-3234 | www.southeastcdc.org (http://www.southeastcdc.org) |
| Comprehensive Housing Assistance, Inc. | Baltimore City and Baltimore County | 21209 | 410-466-1990 | www.chaibaltimore.org (http://www.chaibaltimore.org) |
| Diversified Housing Development, Inc. | Baltimore County | 21244 | 410-496-1214 | www.diversifiedhousing.org (http://www.diversifiedhousing.org) |
| Eastside Community Development Corporation | Baltimore County | 21224 | 410-284-9861 | www.eastsidecdc.org (http://www.eastsidecdc.org) |
| Cecil County Housing Agency | Cecil County | 21921 | 410-996-5245 | http://www.ccgov.org/dept_housing/ (http://www.ccgov.org/dept_housing/) |
| Delmarva Community Services, Inc | Eastern Shore | 21613 | 410-901-2991 | www.dcsdct.org (http://www.dcsdct.org) |
| Salisbury Neighborhood Housing Services | Eastern Shore | 21804 | 410-543-4626 | www.salisburynhs.org (http://www.salisburynhs.org) |
| Shore-Up!Inc. | Eastern Shore | 21804 | 410-749-1142 | www.shoreup.org (http://www.shoreup.org) |
| Maryland Rural Development Corp.** | Eastern Shore and Cecil County | 21639 | 410-275-1824 | www.mrdc.net (http://www.mrdc.net) |
| City of Frederick/Frederick CAA | Frederick | 21701 | 301-600-1506 | www.cityoffrederick.com/fcaa (http://www.cityoffrederick.com/fcaa) |
| Garrett County Community Action Committee | Garrett and Allegany | 21550 | 301-334-9431 | www.garrettcac.org (http://www.garrettcac.org) |
| Home Partnership, Inc. | Harford and Cecil | 21085 | 410-679-3200 | www.homepartnershipinc.org (http://www.homepartnershipinc.org) |
| Harford County Housing Agency | Harford County | 21014 | 410-638-3045 | http://www.harfordhousing.org/ (http://www.harfordhousing.org/) |
| Asian American Homeownership Counseling | Howard, Montgomery and Prince George's | 20852 | 301-760-7636 | www.aa-hc.org (http://www.aa-hc.org) |
| Housing Initiative Partnership, Inc.* | Montgomery and Prince George's | 20782 | 301-699-3835 | www.hiphomes.org (http://www.hiphomes.org) |
| Centro de Apoyo Familiar (CAF) | Montgomery and Prince George's County | 20737 | 301-328-3292 | www.mycaf.org (http://www.mycaf.org) |
| Latino Economic Development Corporation* | Montgomery County | 20902 | 1-866-977-LEDC (5332) | www.ledcmetro.org (http://www.ledcmetro.org) |
| Greater Washington Urban League, Inc. | Prince George's County | 20009 | 301-985-3519 | http://www.gwul.org/ (http://www.gwul.org) |
| HomeFree-USA* | Prince George's | 20782 | 301-891-8400 | www.homefreeusa.org (http://www.homefreeusa.org) |
| Kairos Development Corporation | Prince George's | 20746 | 301-899-1180 | www.kairosgroups.org (http://www.kairosgroups.org) |
| Sowing Empowerment and Economic Development* | Prince George's | 20737 | 301-458-9808 | www.seedinc.org (http://www.seedinc.org) |
| United Communities Against Poverty | Prince George's | 20731 | 301-322-5700 | www.ucappgc.org (http://www.ucappgc.org) |
| Housing Options and Planning Enterprises, Inc.* | Prince George's and Charles | 20745 | 301-567-3330 | www.hopefinancial.org (http://www.hopefinancial.org) |
| Unity Economic Development Corporation | Prince George's and Charles | 20613 | 301-505-0331 | www.unityedc.org (http://www.unityedc.org) |
| Housing Counseling Services (HCS) | Prince George's County | 20009 | 202-667-7006 | http://housingetc.org (http://housingetc.org) |
| Lydia's House in Southeast | Prince George's County | 20774 | 301-322-5353 | http://www.lydiashousendc.org/ (http://www.lydiashousendc.org/) |
| Southern Maryland Tri-County CAC | Southern Maryland | 20637 | 301-274-4474 | www.smtccac.org (http://www.smtccac.org) |
| Consumer Credit Counseling Service of Maryland and Delaware, Inc. | Statewide | 21228 (Main Office) 8 other offices | 1-800-642-2227 | www.cccs-inc.org (http://www.cccs-inc.org) |
| St. Ambrose Housing Aid Center, Inc. | Statewide | 21218 | 410-366-8550 x235 | www.stambros.org (http://www.stambros.org) |
| Springboard Consumer Credit Management, Inc. | Statewide | 20817 | 1-877-947-3752 | http://springboard.org/ (http://springboard.org/) |
| Hagerstown Neighborhood Development Corp. | Washington | 21740 | 301-797-0900 | www.hagerstownhomestore.org (http://www.hagerstownhomestore.org) |
| Washington County Community Action Committee | Washington | 21740 | 301-797-4161 | www.wccac.org (http://www.wccac.org) |



---

## Homeowner's Information Packet
### *for PNC Mortgage Customers*

---

As your mortgage loan servicer, we want you to know there is a program available that may help you.  If you qualify under the federal government's Home Affordable Modification program and comply with the terms of the Home Affordable Modification Program Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure.

The modification may involve some or all of the following changes to your mortgage loan:
1) Bringing your account current;
2) Reducing the interest rate on your loan;
3) Extending the term of the loan, and
4) Delaying your payment of a portion of the mortgage principal until the end of the loan term.

How can you find out if you qualify?  Just follow the steps below and let us know that you need help, TODAY!

**STEP 1**      **GATHER THE INFO WE NEED TO HELP YOU**

- Explain the financial hardship that makes it difficult for you to pay your mortgage loan using the **MHA Request for Modification and Affidavit (RMA) form (enclosed) completed and signed by all borrowers.**
- Submit the required documentation of your income.
- Make timely monthly trial-period payments.

If you meet the eligibility criteria, you will be offered a Trial Period Plan.  The monthly trial period payments will be based on the income documentation that you provide.  They will be an estimate of what your payment will be if we are able to modify your loan under the terms of the program.

If you do not qualify for a loan modification, we will work with you to explore other options available to help you keep your home or ease your transition to a new home.

**STEP 2**      **COMPLETE AND SUBMIT**

Please complete the enclosed forms and submit all the required income documentation. Please take the steps outlined on the enclosed document "Complete Your Checklist."  If you have any questions, please contact us at (866) 804-7257.


Sincerely,

CUSTOMER SERVICE DEPARTMENT

> The *Making Home Affordable* program was created to help millions of homeowners refinance or modify their mortgages. As part of this program the owner of your loan, your servicer, and the Federal Government are working to offer you options to help you stay in your home.

Attachments:  Complete Your Checklist, RMA and IRS Form 4506-T.



**LEADING THE WAY**

<span style="background-color: gray;">**IMPORTANT NOTICE**</span>     **We want to help you avoid foreclosure scams**

---

### Beware of Foreclosure Rescue Scams.  Help is free!

- There is never a fee to get assistance or information about the Making Home Affordable program from your lender or a HUD-approved housing counselor.

   o   For a HUD-approved counselor, visit:  http://www.hud.gov/offices/hsg/sfh/hcc/fc/

- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan.

- Beware of anyone who says they can "save" your home if you sign or transfer over the deed to your house.  Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.

- Never make your mortgage payments to anyone other than your mortgage company without their approval.

---

**Homeowner's HOPE™ Hotline**
If you have questions about the program that your servicer cannot answer or need further counseling, call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673).  The Hotline can help with questions about the program and offers access to free HUD-certified counseling services in English and Spanish.



If you are aware of fraud, waste, mismanagement, or misrepresentations affiliated with the Troubled Asset Relief Program, please contact SIGTARP at 1-877-SIG-2009 (toll-free), 202-622-4559 (fax), or www.sigtarp.gov.  Mail can be sent to Hotline Office of the Special Inspector General for Troubled Asset Relief Program, 1801 L St. NW, Washington, DC 20220.





**COMPLETE YOUR CHECKLIST**     This is the information we need to help you to modify your mortgage payments.

To see if you qualify for this program, fax to (937) 910-4009 or mail the items listed below to:

> **Attention:  Central Receipts – HAMP Bldg 7 – B6-YM10-01-1;**
> **PNC Mortgage**
> **3232 Newmark Drive**
> **Miamisburg OH  45342**

☐ **1. The enclosed MHA Request for Modification & Affidavit (RMA)** form completed and signed by all borrowers, **AND**

☐ **2. Signed and dated copy of the enclosed IRS Form 4506-T** (Request for Transcript of Tax Return) for each borrower (borrowers who filed their tax returns jointly may send in one IRS Form 4506-T signed and dated by both of the joint filers), **AND**

☐ **3. Documentation that will be used by us to verify the income of each borrower.** This documentation includes:

    **For borrowers who are current on their mortgage payments.**
        ☐ Copy of the most recently filed signed federal tax return with all schedules, including Schedule E—Supplemental Income and Loss.

    **For each borrower who receives a salary or hourly wages:**
        ☐ Copy of your two most recent pay stubs that show year-to-date earnings.

    **For each borrower who is self-employed:**
        ☐ Most recent quarterly or year-to-date profit/loss statement.

    **For each borrower who receives other earned income (e.g. overtime, bonus, commission, fee, housing allowance, tips).**
        ☐ Reliable third party documentation describing the nature of the income (e.g. an employment contract or printouts documenting tip income.)

    **For each borrower who has income such as social security, disability or death benefits, pension, adoption assistance, or public assistance:**
        ☐ Copy of benefits statement or letter from the provider that states the amount, frequency and duration of the benefit, **AND**
        ☐ Copy of two most recent bank statements showing receipt of such payment.

    **For each borrower who has unemployment income.**
        ☐ Copy of benefits statement or letter from the provider that states the amount, frequency, and duration of the benefit (may be evidenced by a print out from the Department of Labor UI Benefit tool, which is available at http://www.ows.doleta.gov/unemploy/ben_entitle.asp.) **AND**
        ☐ Copy of two most recent bank statements showing receipt of such payment.

    **For each borrower who is relying on alimony or child support as qualifying income*:**
        Copy of divorce or other court decree; or separation agreement or other written agreement filed with the court that states the amount and period of time over which it will be received, **AND**
        Two most recent bank statements showing receipt of such payment.

    **For each borrower who has rental income:**
        Copy of the most recently filed signed federal tax return with all schedules, including Schedule E—Supplemental Income and Loss.

> *You are not required to disclose Child Support, Alimony or Separation Maintenance income, unless you choose to have it considered by your servicer.*

If you have other types of income, cannot locate the required documents, or have questions about the paperwork required, please contact us at (866) 804-7257.
***Keep a copy of all documents for your records. Don't send original income documentation.***

**Making Home Affordable Program**
**Request For Modification and Affidavit (RMA)**



**MAKING HOME AFFORDABLE.GOV**

| REQUEST FOR MODIFICATION AND AFFIDAVIT (RMA)   page 1 | COMPLETE ALL THREE PAGES OF THIS FORM |

▶ Loan I.D. Number_____   ▶ Servicer _____

| BORROWER | CO-BORROWER |
|---|---|
| Borrower's name | Co-borrower's name |
| Social Security number          Date of birth | Social Security number          Date of birth |
| Home phone number with area code | Home phone number with area code |
| Cell or work number with area code | Cell or work number with area code |

| | | | |
|---|---|---|---|
| *I want to:* | ☐ Keep the Property | ☐ Sell the Property | |
| *The property is my:* | ☐ Primary Residence | ☐ Second Home | ☐ Investment |
| *The property is:* | ☐ Owner Occupied | ☐ Renter Occupied | ☐ Vacant |

Mailing address

Property address (if same as mailing address, just write same)                        E-mail address

*Is the property listed for sale?* ☐Yes ☐No
*Have you received an offer on the property?* ☐ Yes ☐No
*Date of offer* _____ *Amount of offer $* _____
*Agent's Name:* _____
*Agent's Phone Number:* _____
*For Sale by Owner?* ☐Yes ☐No

*Have you contacted a credit-counseling agency for help* ☐Yes ☐No
*If yes, please complete the following:*
*Counselor's Name:* _____
*Agency Name:* _____
*Counselor's Phone Number:* _____
*Counselor's E-mail:* _____

*Who pays the real estate tax bill on your property?*
☐I do  ☐Lender does  ☐Paid by condo or HOA
*Are the taxes current?* ☐Yes ☐No
*Condominium or HOA Fees* ☐Yes ☐ No  $ _____
*Paid to:* _____

*Who pays the hazard insurance premium for your property?*
☐I do  ☐Lender does  ☐Paid by Condo or HOA
*Is the policy current?* ☐Yes ☐No
*Name of Insurance Co.:* _____
*Insurance Co. Tel #:* _____

*Have you filed for bankruptcy?* ☐Yes ☐No   *If yes:* ☐Chapter 7 ☐Chapter 13   *Filing Date:* _____
*Has your bankruptcy been discharged?* ☐ Yes ☐ No   *Bankruptcy case number* _____

*Additional Liens/Mortgages or Judgments on this property:*

| Lien Holder's Name/Servicer | Balance | Contact Number | Loan Number |
|---|---|---|---|
| | | | |
| | | | |

| HARDSHIP AFFIDAVIT |
|---|

**I (We) am/are requesting review under the Making Home Affordable program.**
**I am having difficulty making my monthly payment because of financial difficulties created by (check all that apply):**

| | |
|---|---|
| ☐ My household income has been reduced. For example: unemployment, underemployment, reduced pay or hours, decline in business earnings, death, disability or divorce of a borrower or co-borrower. | ☐ My monthly debt payments are excessive and I am overextended with my creditors. Debt includes credit cards, home equity or other debt. |
| ☐ My expenses have increased. For example: monthly mortgage payment reset, high medical or health care costs, uninsured losses, increased utilities or property taxes. | ☐ My cash reserves, including all liquid assets, are insufficient to maintain my current mortgage payment and cover basic living expenses at the same time. |

☐ Other:

Explanation (continue on back of page 3 if necessary): _____
_____
_____

| REQUEST FOR MODIFICATION AND AFFIDAVIT (RMA) page 2 | COMPLETE ALL THREE PAGES OF THIS FORM |
|---|---|

## INCOME/EXPENSES FOR HOUSEHOLD[1]

Number of People in Household: _____

| Monthly Household Income | | Monthly Household Expenses/Debt | | Household Assets | |
|---|---|---|---|---|---|
| Monthly Gross Wages | $ | First Mortgage Payment | $ | Checking Account(s) | $ |
| Overtime | $ | Second Mortgage Payment | $ | Checking Account(s) | $ |
| Child Support / Alimony / Separation[2] | $ | Insurance | $ | Savings/ Money Market | $ |
| Social Security/SSDI | $ | Property Taxes | $ | CDs | $ |
| Other monthly income from pensions, annuities or retirement plans | $ | Credit Cards / Installment Loan(s) (total minimum payment per month) | $ | Stocks / Bonds | $ |
| Tips, commissions, bonus and self-employed income | $ | Alimony, child support payments | $ | Other Cash on Hand | $ |
| Rents Received | $ | Net Rental Expenses | $ | Other Real Estate (estimated value) | $ |
| Unemployment Income | $ | HOA/Condo Fees/Property Maintenance | $ | Other _____ | $ |
| Food Stamps/Welfare | $ | Car Payments | $ | Other _____ | $ |
| Other (investment income, royalties, interest, dividends etc.) | $ | Other _____ _____ | $ | Do not include the value of life insurance or retirement plans when calculating assets (401k, pension funds, annuities, IRAs, Keogh plans, etc.) | |
| Total (Gross Income) | $ | Total Debt/Expenses | $ | Total Assets | $ |

### INCOME MUST BE DOCUMENTED

[1]Include combined income and expenses from the borrower and co-borrower (if any). If you include income and expenses from a household member who is not a borrower, please specify using the back of this form if necessary.

[2]You are not required to disclose Child Support, Alimony or Separation Maintenance income, unless you choose to have it considered by your servicer.

### INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the federal government in order to monitor compliance with federal statutes that prohibit discrimination in housing. **You are not required to furnish this information, but are encouraged to do so. The law provides that a lender or servicer may not discriminate either on the basis of this information, or on whether you choose to furnish it.** If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, the lender or servicer is required to note the information on the basis of visual observation or surname if you have made this request for a loan modification in person. **If you do not wish to furnish the information, please check the box below.**

| BORROWER | ☐ I do not wish to furnish this information | CO-BORROWER | ☐ I do not wish to furnish this information |
|---|---|---|---|
| *Ethnicity:* | ☐ Hispanic or Latino<br>☐ Not Hispanic or Latino | *Ethnicity:* | ☐ Hispanic or Latino<br>☐ Not Hispanic or Latino |
| *Race:* | ☐ American Indian or Alaska Native<br>☐ Asian<br>☐ Black or African American<br>☐ Native Hawaiian or Other Pacific Islander<br>☐ White | *Race:* | ☐ American Indian or Alaska Native<br>☐ Asian<br>☐ Black or African American<br>☐ Native Hawaiian or Other Pacific Islander<br>☐ White |
| *Sex:* | ☐ Female<br>☐ Male | *Sex:* | ☐ Female<br>☐ Male |

| To be completed by interviewer | | Name/Address of Interviewer's Employer |
|---|---|---|
| *This request was taken by:*<br>☐ Face-to-face interview<br>☐ Mail<br>☐ Telephone<br>☐ Internet | *Interviewer's Name (print or type) & ID Number*<br><br>*Interviewer's Signature        Date*<br><br>*Interviewer's Phone Number (include area code)* | |

**REQUEST FOR MODIFICATION AND AFFIDAVIT (RMA)  page 3**  |  **COMPLETE ALL THREE PAGES OF THIS FORM**

### ACKNOWLEDGEMENT AND AGREEMENT

*In making this request for consideration under the Making Home Affordable Program, I certify under penalty of perjury:*

1. That all of the information in this document is truthful and the event(s) identified on page 1 is/are the reason that I need to request a modification of the terms of my mortgage loan, short sale or deed-in-lieu of foreclosure.

2. I understand that the Servicer, the U.S. Department of the Treasury, or their agents may investigate the accuracy of my statements and may require me to provide supporting documentation. I also understand that knowingly submitting false information may violate Federal law.

3. I understand the Servicer will pull a current credit report on all borrowers obligated on the Note.

4. I understand that if I have intentionally defaulted on my existing mortgage, engaged in fraud or misrepresented any fact(s) in connection with this document, the Servicer may cancel any Agreement under Making Home Affordable and may pursue foreclosure on my home.

5. That: my property is owner-occupied; I intend to reside in this property for the next twelve months; I have not received a condemnation notice; and there has been no change in the ownership of the Property since I signed the documents for the mortgage that I want to modify.

6. I am willing to provide all requested documents and to respond to all Servicer questions in a timely manner.

7. I understand that the Servicer will use the information in this document to evaluate my eligibility for a loan modification or short sale or deed-in-lieu of foreclosure, but the Servicer is not obligated to offer me assistance based solely on the statements in this document.

8. I am willing to commit to credit counseling if it is determined that my financial hardship is related to excessive debt.

9. I understand that the Servicer will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. I understand and consent to the disclosure of my personal information and the terms of any Making Home Affordable Agreement by Servicer to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Homeowner Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services in conjunction with Making Home Affordable; and (e) any HUD-certified housing counselor.

▶ _____     _____
   Borrower Signature                                                         Date

▶ _____     _____
   Co-Borrower Signature                                                      Date

---

**HOMEOWNER'S HOTLINE**

*If you have questions about this document or the modification process, please call your servicer.*

*If you have questions about the program that your servicer cannot answer or need further counseling, you can call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673). The Hotline can help with questions about the program and offers free HUD-certified counseling services in English and Spanish.*


888-995-HOPE™
Homeowner's HOPE™ Hotline

---

**NOTICE TO BORROWERS**

Be advised that by signing this document you understand that any documents and information you submit to your servicer in connection with the Making Home Affordable Program are under penalty of perjury. Any misstatement of material fact made in the completion of these documents including but not limited to misstatement regarding your occupancy in your home, hardship circumstances, and/or income, expenses, or assets will subject you to potential criminal investigation and prosecution for the following crimes: perjury, false statements, mail fraud, and wire fraud. The information contained in these documents is subject to examination and verification. Any potential misrepresentation will be referred to the appropriate law enforcement authority for investigation and prosecution. By signing this document you certify, represent and agree that: "Under penalty of perjury, all documents and information I have provided to Lender in connection with the Making Home Affordable Program, including the documents and information regarding my eligibility for the program, are true and correct."

If you are aware of fraud, waste, abuse, mismanagement or misrepresentations affiliated with the Troubled Asset Relief Program, please contact the SIGTARP Hotline by calling 1-877-SIG-2009 (toll free), 202-622-4559 (fax), or www.sigtarp.gov. Mail can be sent to Hotline Office of the Special Inspector General for Troubled Asset Relief Program, 1801 L St. NW, Washington, DC 20220.

Form **4506-T**

(Rev. January 2008)

Department of the Treasury
Internal Revenue Service

# Request for Transcript of Tax Return

▶ **Do not sign this form unless all applicable lines have been completed.**
**Read the instructions on page 2.**

▶ **Request may be rejected if the form is incomplete, illegible, or any required**
**line was blank at the time of signature.**

OMB No. 1545-1872

**Tip:** Use Form 4506-T to order a transcript or other return information free of charge. See the product list below. You can also call 1-800-829-1040 to order a transcript. If you need a copy of your return, use **Form 4506,** Request for Copy of Tax Return. There is a fee to get a copy of your return.

| | | |
|---|---|---|
| **1a** Name shown on tax return. If a joint return, enter the name shown first. | | **1b** First social security number on tax return or employer identification number (see instructions) |
| **2a** If a joint return, enter spouse's name shown on tax return | | **2b** Second social security number if joint tax return |

**3** Current name, address (including apt., room, or suite no.), city, state, and ZIP code

**4** Previous address shown on the last return filed if different from line 3

**5** If the transcript or tax information is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number. The IRS has no control over what the third party does with the tax information.

**Caution:** ***DO NOT SIGN*** this form if a third party requires you to complete Form 4506-T, and lines 6 and 9 are blank.

**6** **Transcript requested.** Enter the tax form number here (1040, 1065, 1120, etc.) and check the appropriate box below. Enter only one tax form number per request. ▶ _____

 **a** **Return Transcript,** which includes most of the line items of a tax return as filed with the IRS. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120A, Form 1120H, Form 1120L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years. Most requests will be processed within 10 business days . . . . . . . . . . . . . . . . . . . . . ☐

 **b** **Account Transcript,** which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns. Most requests will be processed within 30 calendar days . ☐

 **c** **Record of Account,** which is a combination of line item information and later adjustments to the account. Available for current year and 3 prior tax years. Most requests will be processed within 30 calendar days . . . . . . . . . . . . . . ☐

**7** **Verification of Nonfiling,** which is proof from the IRS that you **did not** file a return for the year. Most requests will be processed within 10 business days . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

**8** **Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript.** The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2006, filed in 2007, will not be available from the IRS until 2008. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213. Most requests will be processed within 45 days . . . . . ☐

**Caution:** *If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.*

**9** **Year or period requested.** Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than four years or periods, you must attach another Form 4506-T. For requests relating to quarterly tax returns, such as Form 941, you must enter each quarter or tax period separately.

|  /  /  |  /  /  |  /  /  |  /  /  |
|---|---|---|---|

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, **either** husband or wife must sign. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-T on behalf of the taxpayer.

Telephone number of taxpayer on line 1a or 2a
( )

**Sign Here**

▶ Signature (see instructions)                     Date

▶ Title (if line 1a above is a corporation, partnership, estate, or trust)

▶ Spouse's signature                     Date

For Privacy Act and Paperwork Reduction Act Notice, see page 2.          Cat. No. 37667N          Form **4506-T** (Rev. 1-2008)

# General Instructions

**Purpose of form.** Use Form 4506-T to request tax return information. You can also designate a third party to receive the information. See line 5.

**Tip.** Use Form 4506, Request for Copy of Tax Return, to request copies of tax returns.

**Where to file.** Mail or fax Form 4506-T to the address below for the state you lived in, or the state your business was in, when that return was filed. There are two address charts: one for individual transcripts (Form 1040 series and Form W-2) and one for all other transcripts.

If you are requesting more than one transcript or other product and the chart below shows two different RAIVS teams, send your request to the team based on the address of your most recent return.

**Note.** *You can also call 1-800-829-1040 to request a transcript or get more information.*

## Chart for individual transcripts (Form 1040 series and Form W-2)

| If you filed an individual return and lived in: | Mail or fax to the "Internal Revenue Service" at: |
| --- | --- |
| District of Columbia, Maine, Maryland, Massachusetts, New Hampshire, New York, Vermont | RAIVS Team Stop 679 Andover, MA 05501 978-247-9255 |
| Alabama, Delaware, Florida, Georgia, North Carolina, Rhode Island, South Carolina, Virginia | RAIVS Team P.O. Box 47-421 Stop 91 Doraville, GA 30362 770-455-2335 |
| Kentucky, Louisiana, Mississippi, Tennessee, Texas, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team Stop 6716 AUSC Austin, TX 73301 512-460-2272 |
| Alaska, Arizona, California, Colorado, Hawaii, Idaho, Iowa, Kansas, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Washington, Wisconsin, Wyoming | RAIVS Team Stop 37106 Fresno, CA 93888 559-456-5876 |
| Arkansas, Connecticut, Illinois, Indiana, Michigan, Missouri, New Jersey, Ohio, Pennsylvania, West Virginia | RAIVS Team Stop 6705-B41 Kansas City, MO 64999 816-292-6102 |

## Chart for all other transcripts

| If you lived in or your business was in: | Mail or fax to the "Internal Revenue Service" at: |
| --- | --- |
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Georgia, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah, Washington, Wyoming, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409 801-620-6922 |
| Connecticut, Delaware, District of Columbia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia, Wisconsin | RAIVS Team P.O. Box 145500 Stop 2800 F Cincinnati, OH 45250 859-669-3592 |

**Line 1b.** Enter your employer identification number (EIN) if your request relates to a business return. Otherwise, enter the first social security number (SSN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Line 6.** Enter only one tax form number per request.

**Signature and date.** Form 4506-T must be signed and dated by the taxpayer listed on line 1a or 2a. If you completed line 5 requesting the information be sent to a third party, the IRS must receive Form 4506-T within 60 days of the date signed by the taxpayer or it will be rejected.

*Individuals.* Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506-T exactly as your name appeared on the original return. If you changed your name, also sign your current name.

*Corporations.* Generally, Form 4506-T can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer.

*Partnerships.* Generally, Form 4506-T can be signed by any person who was a member of the partnership during any part of the tax period requested on line 9.

*All others.* See Internal Revenue Code section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the Letters Testamentary authorizing an individual to act for an estate.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. Sections 6103 and 6109 require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, and the District of Columbia for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-T will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form,** 10 min.; **Preparing the form,** 12 min.; and **Copying, assembling, and sending the form to the IRS,** 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-T simpler, we would be happy to hear from you. You can write to the Internal Revenue Service, Tax Products Coordinating Committee, SE:W:CAR:MP:T:T:SP, 1111 Constitution Ave. NW, IR-6526, Washington, DC 20224. Do not send the form to this address. Instead, see *Where to file* on this page.

AFTER RECORDING, PLEASE RETURN TO:

BWW#: 191945
TaxID: 01-02880083

BWW Law Group, LLC
6003 Executive Blvd., Suite 101
Rockville, MD 20852

## APPOINTMENT OF SUBSTITUTE TRUSTEES

WHEREAS, by a Deed of Trust dated January 31, 2007, and recorded among the Land Records of Montgomery County, Maryland in Liber 33792, Folio 290, Patricia A. Nash did grant and convey to Lawyers Title Realty Srvc Inc A Virginia Corp, Trustee(s), the real property described in said Deed of Trust to secure an indebtedness evidenced by a promissory note of the same date and also described in said Deed of Trust, and;

WHEREAS, under the terms of the Deed of Trust, the holder of the beneficial interest in the Deed of Trust may remove the trustee(s) and appoint successor trustee(s), and;

WHEREAS, PNC Bank, NA is the holder of the beneficial interest in the Deed of Trust by virtue of being the holder or agent of the holder of the Note secured by the aforementioned Deed of Trust.

NOW THEREFORE, by virtue of the authority granted in the aforementioned Deed of Trust the undersigned hereby appoints Carrie M. Ward, Howard N. Bierman, Jacob Geesing, Pratima Lele, Joshua Coleman, Richard R. Goldsmith, Jr., Ludeen McCartney-Green, Jason Kutcher, Elizabeth C. Jones and Nicholas Derdock as Substitute Trustees under the said Deed of Trust, any of whom may act independently, in the place and stead of the trustee(s) originally named therein or in place of any other trustee(s) who have heretofore been substituted for the originally name trustee(s), the said Substitute Trustees being vested with all of the right, title and interest and clothed with all the rights, power and privileges of the trustee(s) by the terms of said Deed of Trust and by applicable law.

**Property address: 8800 Laurel Valley Lane, Montgomery Village, MD 20886**

PNC Bank, NA

Name: _____ Bruce Trowman _____

Title: _____ Authorized Signer _____

Date: _____ 4-3-15 _____

STATE OF ___Ohio___ )

COUNTY OF ___Montgomery___ ) ss.

On this _3rd_ day of _April_, 20_15_, before me, personally appeared _Bruce Trowman_____, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to within the instrument and acknowledged that he/she/they executed the same for purposes therein contained.

Given under my hand and seal.

My Commission Expires: _April 5, 2017_       _____
                                              Notary Public

JANICE M. GRILL, NOTARY PUBLIC
COMM. EXP. APRIL 5, 2017
STATE OF OHIO

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| Carrie M. Ward | * |
| Howard N. Bierman | * |
| Jacob Geesing | * |
| Pratima Lele | * |
| Joshua Coleman | * |
| Richard R. Goldsmith, Jr. | * |
| Ludeen McCartney-Green | * |
| Jason Kutcher | * |
| Nicholas Derdock | * |
| Elizabeth C. Jones | * |
| | * |
| 6003 Executive Blvd., Suite 101 | * |
| Rockville, MD 20852 | * |
|     Substitute Trustees | * |
|     Plaintiffs | * |
| vs. | * |
| PATRICIA A. NASH | *    Case No. |
| 8800 Laurel Valley Lane | * |
| Montgomery Village, MD  20886 | * |
| | * |
|     Defendant(s) | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## ORDER TO DOCKET

To the Clerk:

    Please docket the above entitled foreclosure action, and accept for filing the following:

    (1) Copy of the Lien Instrument, with Affidavit of Truth and Accuracy of same pursuant to Rule 14-207(b)(1);

    (2) Affidavit, pursuant to Rule 14-207(b)(2), that the plaintiff has the right to foreclose with a statement of the debt remaining due and payable;

    (3) Pursuant to Rule 14-207(b)(3), a copy of any separate debt instrument or note, along with an affidavit stating that it is a true and accurate copy and certifying ownership of said debt instrument;

    (4) Pursuant to Rule 14-207(b)(4), a copy of the Appointment of Substitute Trustee or of any assignment of the lien instrument for the purpose of foreclosure along with an affidavit that it is a true and accurate copy of said instrument;

    (5) Pursuant to Rule 14-207(b)(5), an affidavit with respect to any defendant who is an individual that the individual is not in the military service of the United States as defined in the SCRA, or that the action is authorized by the Act;

    (6) A statement as to whether the property being foreclosed is residential property and, if so, statements in boldface type as to whether the property is owner occupied residential property,

NO DEBT COLLECTION ATTEMPT WILL BE MADE IN VIOLATION OF THE AUTOMATIC STAY OF 11 U.S.C. SECTION 362(a), OR OF ANY BANKRUPTCY DISCHARGE OR BANKRUPTCY COURT ORDER

BWW#: 191945

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| Carrie M. Ward | * |
| Howard N. Bierman | * |
| Jacob Geesing | * |
| Pratima Lele | * |
| Joshua Coleman | * |
| Richard R. Goldsmith, Jr. | * |
| Ludeen McCartney-Green | * |
| Jason Kutcher | * |
| Nicholas Derdock | * |
| Elizabeth C. Jones | * |
| | * |
| 6003 Executive Blvd., Suite 101 | * |
| Rockville, MD 20852 | * |
|     Substitute Trustees | * |
|     Plaintiffs | * |
| vs. | * |
| PATRICIA A. NASH | *    Case No. |
| 8800 Laurel Valley Lane | * |
| Montgomery Village, MD 20886 | * |
| | * |
|     Defendant(s) | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## ORDER TO DOCKET

To the Clerk:

    Please docket the above entitled foreclosure action, and accept for filing the following:

    (1) Copy of the Lien Instrument, with Affidavit of Truth and Accuracy of same pursuant to Rule 14-207(b)(1);

    (2) Affidavit, pursuant to Rule 14-207(b)(2), that the plaintiff has the right to foreclose with a statement of the debt remaining due and payable;

    (3) Pursuant to Rule 14-207(b)(3), a copy of any separate debt instrument or note, along with an affidavit stating that it is a true and accurate copy and certifying ownership of said debt instrument;

    (4) Pursuant to Rule 14-207(b)(4), a copy of the Appointment of Substitute Trustee or of any assignment of the lien instrument for the purpose of foreclosure along with an affidavit that it is a true and accurate copy of said instrument;

    (5) Pursuant to Rule 14-207(b)(5), an affidavit with respect to any defendant who is an individual that the individual is not in the military service of the United States as defined in the SCRA, or that the action is authorized by the Act;

    (6) A statement as to whether the property being foreclosed is residential property and, if so, statements in boldface type as to whether the property is owner occupied residential property,

NO DEBT COLLECTION ATTEMPT WILL BE MADE IN VIOLATION OF THE AUTOMATIC STAY OF 11 U.S.C. SECTION 362(a), OR OF ANY BANKRUPTCY DISCHARGE OR BANKRUPTCY COURT ORDER

if known, and that a final loss mitigation affidavit is NOT attached; and the secured party and the borrower have not elected to participate in prefile mediation.

(7) A Preliminary Loss Mitigation Affidavit, instructions for completing a loss mitigation application, a loss mitigation application and a description of loss mitigation option (service copy also includes addressed envelope);

(8) If the property is residential real property, a copy of the Notice of Intent to Foreclose with an Affidavit(s) that the NOI was mailed in accordance with RP7-105.1(c) and stating the date of the default and the nature of the default and at the time the NOI was sent the contents were accurate in accordance with RP7-105.1(e)(1)(ii) and Rule 14-207(b)(8);

(9) A Notice of Foreclosure Action;

(10) An affidavit, in accordance with Rule 14-209(c), of Mailing of Notice to Occupant(s) pursuant to RP7-105.9(b)(1).

License No. Lender: N/A
License No. Originator: N/A

Date: 5/20/2015

Respectfully submitted,

By: _____

**Elizabeth C. Jones**

BWW Law Group, LLC
6003 Executive Blvd., Suite 101
Rockville, MD  20852
Phone: (301) 961-6555
Fax: (301) 961-6545
Email: Courts@bww-law.com

NO DEBT COLLECTION ATTEMPT WILL BE MADE IN VIOLATION OF THE AUTOMATIC STAY OF 11 U.S.C. SECTION 362(a), OR OF ANY BANKRUPTCY DISCHARGE OR BANKRUPTCY COURT ORDER

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| Carrie M. Ward, et al. | * |
| 6003 Executive Blvd., Suite 101 | * |
| Rockville, MD 20852 | * |
|     Substitute Trustees | * |
|     Plaintiffs | * |
| vs. | *    Case No. |
| PATRICIA A. NASH | * |
| 8800 Laurel Valley Lane | * |
| Montgomery Village, MD  20886 | * |
| | * |
|     Defendant(s) | * |

\* \* \* \* \* \* \* \* \* \*

## AFFIDAVIT, PURSUANT TO MD RULE 14-207(b)(1) REGARDING COPY OF LIEN INSTRUMENT

The undersigned Substitute Trustee, pursuant to Maryland Rule 14-207(b)(1), does hereby affirm, under the penalties of perjury, that filed herein is a true and accurate copy of the lien instrument, the default under the terms of which gives rise to this foreclosure action, i.e., a recorded Deed of Trust found among the Land Records of Montgomery County in  Liber 33792, Folio 290.

The undersigned solemnly affirms under the penalties of perjury that the contents of the foregoing Affidavit are true to the best of his or her knowledge, information and belief.

Respectfully submitted,

Date:  5/20/2015

Elizabeth C. Jones

6003 Executive Blvd., Suite 101
Rockville, MD  20852
Phone: (301) 961-6555
Fax: (301) 961-6545
Email: Courts@bww-law.com

33792 290

Return To:

National City Bank
P.O. Box 8800
Dayton, OH 45401-8800

REBECCA GLAS

Prepared By:

National City Bank
P.O. Box 8800
Dayton, OH 45401-8800

AFTER RECORDING RETURN TO:
Peninsula Settlements, LLC
444 N. Frederick Avenue, Suite 316
Gaithersburg, MD 20877

[Space Above This Line For Recording Data]

| | |
|---|---|
| IMP FD SURE | 20.00 |
| RECORDING FEE | 20.00 |
| TOTAL | 40.00 |
| Rcpt M006 | Rcpt # 79425 |
| LEK   RC | Blk # 1750 |
| Feb 08, 2007 | 02:02 PM |

## DEED OF TRUST

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **January 31, 2007** together with all Riders to this document.
(B) "Borrower" is
PATRICIA A NASH

**MONTGOMERY COUNTY, MD**

APPROVED BY

FEB 0 8 2007

Borrower is the trustor under this Security Instrument.
(C) "Lender" is
National City Mortgage a division of
National City Bank

$307.05 RECORDATION TAX PAID
$ NA     TRANSFER TAX PAID

MARYLAND -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

NATL006(MD)  (0502)

Page 1 of 15          Initials:

VMP Mortgage Solutions, Inc.

Form 3021 1/01

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LEK 33792, p. 0290, MSA_CE63_33749. Date available 02/14/2007. Printed 02/04/2015.

2007 FEB -8 P 2: 09

FILED
LORETTA E. KNIGHT
CLERK'S OFFICE
MONTGOMERY CO. MD.

MONTGOMERY COUNTY CIRCUIT COURT (Land Records)

33792   291

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LEK 33792, p. 0291, MSA_CE63_33749. Date available 02/14/2007. Printed 02/04/2015.

Lender is a **National Banking Association**
organized and existing under the laws of     **United States**
Lender's address is   **3232 NEWMARK DRIVE, MIAMISBURG, OH  45342**

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is     **Lawyers Title Realty Srvc Inc A Virginia Corp**

**(E) "Note"** means the promissory note signed by Borrower and dated   **January 31, 2007**
The Note states that Borrower owes Lender
    **FOUR HUNDRED SEVENTEEN THOUSAND & 00/100**                                      Dollars
(U.S. $    **417,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than   **February 1, 2037**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] Occup Rider |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the
Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this

NATL006(MD)  (0602)                    Page 2 of 16                    Initials: _____          Form 3021  1/01

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LEK 33792, p. 0292, MSA_CE63_33749. Date available 02/14/2007. Printed 02/04/2015.

Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                                    of          Montgomery                         :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]


SEE ATTACHED PROPERTY DESCRIPTION


Parcel ID Number:                                    which currently has the address of
     8800 LAUREL VALLEY LANE,                                             [Street]
     MONTGOMERY VILLAGE                      [City], Maryland    20886       [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any

NATL006(MD)  (0002)                    Page 3 of 16        Initials:        Form 3021  1/01

33792  293

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LEK 33792, p. 0293, MSA_CE63_33749. Date available 02/14/2007. Printed 02/04/2015.

prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all

NATL006(MD)  (0802)                Page 4 of 15         Initials:                Form 3021  1/01

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LEK 33792, p. 0294, MSA_CE63_33749. Date available 02/14/2007. Printed 02/04/2015.

Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

NATL006(MD)  (0802)                     Page 5 of 15          Initials:           Form 3021  1/01

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LEK 33792, p. 0295, MSA_CE63_33749. Date available 02/14/2007. Printed 02/04/2015.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

NATL006(MD)  (0802)                    Page 6 of 15                    Initials: _____          Form 3021  1/01

33792   296

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LEK 33792, p. 0296, MSA_CE63_33749. Date available 02/14/2007. Printed 02/04/2015.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate

NATL006(MD)  (0602)                    Page 7 of 15              Initial:                    Form 3021  1/01

33792   297

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LEK 33792, p. 0297, MSA_CE63_33749. Date available 02/14/2007. Printed 02/04/2015.

building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

33792   298

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

NATL006(MD)  (0002)                    Page 9 of 15          Initials: ___        Form 3021  1/01

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LEK 33792, p. 0298. MSA_CE63_33749. Date available 02/14/2007. Printed 02/04/2015.

33792   299

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

NATL006(MD)   (0802)                          Page 10 of 16                    Initials: _____        Form 3021   1/01

33792· 300

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LEK 33792, p. 0300, MSA_CE63_33749. Date available 02/14/2015. Printed 02/04/2015.

33792·  301

Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LEK 33792, p. 0301, MSA_CE63_33749. Date available 02/14/2007. Printed 02/04/2015.

33792:  302

not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale, assent to decree, and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement and by such other means as required by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of        Five        % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this Section 22 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Instrument.

NATL006(MD)  (0802)                        Page 13 of 15                    Initials        Form 3021  1/01

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LEK 33792, p. 0302. MSA_CE63_33749. Date available 02/14/2007. Printed 02/04/2015.

33792 303

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                   PATRICIA A NASH          -Borrower

_____          _____ (Seal)
                                                            -Borrower

_____ (Seal)    _____ (Seal)
                     -Borrower                              -Borrower

_____ (Seal)    _____ (Seal)
                     -Borrower                              -Borrower

_____ (Seal)    _____ (Seal)
                     -Borrower                              -Borrower

NATL006(MD)  (0602)            Page 14 of 15            Form 3021  1/01

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LEK 33792, p. 0303, MSA_CE63_33749. Date available 02/14/2007. Printed 02/04/2015.

33792·  304·

STATE OF MARYLAND,     *Montgomery*     County ss:

I Hereby Certify, That on this *31st* day of *January 2007*, before me, the subscriber, a Notary Public of the State of Maryland, in and for the *County of Howard* personally appeared

*Patricia A. Nash*

known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge that he/she/they executed the same for the purposes therein contained.

AS WITNESS: my hand and notarial seal.

My Commission Expires:

Notary Public

**Michael Tadenev**
**Notary Public**
**Howard County, Maryland**
**My Commission Expires Sept. 21, 2010**

STATE OF *Maryland*     *Montgomery*     County ss:

I Hereby Certify, That on this *31st* day of *January 2007*, before me, the subscriber, a Notary Public of the State of *Maryland* and for the *county of Howard* personally appeared *Bruce L. Stern*

the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time not later than the execution and delivery by the Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties secured and is duly authorized to make this affidavit.

AS WITNESS: my hand and notarial seal.

My Commission Expires:

Notary Public

**Michael Tadenev**
**Notary Public**
**Howard County, Maryland**
**My Commission Expires Sept. 21, 2010**

This is to certify that the within instrument was prepared

REBECCA GLAS
National City Mortgage
a division of National City Bank

Initials:

NATL006(MD)   (0602)               Page 16 of 16               Form 3021  1/01

33792   305

Lot numbered One Hundred and Fifty-four (154), in the subdivision known as "PLAT 491, MEADOWGATE, EAST VILLAGE, MONTGOMERY VILLAGE", as per Plat thereof duly recorded among the Land Records of Montgomery County, Maryland in Plat Book 157 at Plat 17848.

Property Address:       8800 Laurel Valley Lane, Montgomery Village, MD 20886

Tax ID Number:

Title Insurer:          Lawyers Title Insurance Corporation

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LEK 33792, p. 0305, MSA_CE63_33749. Date available 02/14/2007. Printed 02/04/2015.

33792   306



# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **31st** day of **January 2007**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to

**National City Mortgage a division of
National City Bank**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**8800 LAUREL VALLEY LANE, MONTGOMERY VILLAGE, Maryland 20886**

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

(the "Declaration"). The Property is a part of a planned unit development known as **MEADOWGATE**

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3150 1/01**

Page 1 of 3

Initials: 

(VMP) **-7R** (0411)        VMP Mortgage Solutions, Inc. (800)521-7291

MONTGOMERY COUNTY CIRCUIT COURT (Land Records)\LEK 33792, p. 0306, MSA_CE63_33749. Date available 02/14/2007. Printed 02/04/2015.

33792 307

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

VMP®-7R (0411)                               Page 2 of 3                               Initials: ___          Form 3150 1/01

33792  308

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
                        -Borrower

_____ (Seal)
PATRICIA A NASH          -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

VMP®-7R (0411)                Page 3 of 3                    Form 3150 1/01

## BORROWER OCCUPANCY RIDER

This Borrower Occupancy Rider is made this 31st day of January , 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure said borrower's Note to _____
National City Mortgage a division of
National City Bank _____ (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

8800 LAUREL VALLEY LANE

MONTGOMERY VILLAGE, Maryland 20886

**Additional Covenants.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**BORROWER OCCUPANCY COVENANT**

Borrower agrees to occupy the property as borrower's principal residence within sixty (60) days after the date of the Security Instrument. If Borrower does not so occupy the property, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by law as of the date of the Security Instrument.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Borrower Occupancy Rider.

Borrower PATRICIA A NASH _____     Borrower _____

Borrower _____                      Borrower _____

Borrower _____                      Borrower _____

Borrower _____                      Borrower _____

OCCRIDER                                                    (04/05)

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LEK 33792, p. 0309. MSA_CE63_33749. Date available 02/14/2007. Printed 02/04/2015.

33792  310

## AFFIDAVIT MADE PURSUANT TO SECTION 12-108(G)(3)
## OF THE TAX-PROPERTY ARTICLE OF
## THE ANNOTATED CODE OF MARYLAND

**THE** undersigned makes this oath, in due form of law and under the penalties of perjury, that the following is true to the best of my knowledge, information and belief, in accordance with Section 12-108(g)(3) of the Tax-Property Article of the Annotated Code of Maryland, as follows:

1. That I am the original mortgagor of the Deed of Trust recorded in the  of the County of Montgomery, State of Maryland, in Book 27375, Page 292.

2. That the mortgaged property is my principal residence.

3. That the amount of unpaid principal of the original Deed of Trust being refinanced is **$218,841.41**.

DATED this ___**31st**___ day of _____**January**_____, __**2007**__.

Patricia A. Nash

State of Maryland, County of ___Montgomery___

I HEREBY CERTIFY THAT on this 31st day of January, 2007, before me, the subscriber, a Notary Public of the jurisdiction aforesaid, personally appeared __**Patricia A. Nash**__, known to me (or satisfactorily proven) to be the person described in the foregoing instrument and made oath in due form of law, and under the penalties of perjury, that the matters and facts set forth herein are true.

As witness, my hand and notarial seal.

NOTARY PUBLIC
My Commission Expires: _____

**Michael Tadenev**
Notary Public
Howard County, Maryland
My Commission Expires Sept. 21, 2010

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LEK 33792, p. 0310, MSA_CE63_33749. Date available 02/14/2007. Printed 02/04/2015.

33792 311

## AFFIDAVIT MADE PURSUANT TO SECTION 12-108(G)(3)
## OF THE TAX-PROPERTY ARTICLE OF
## THE ANNOTATED CODE OF MARYLAND

**THE** undersigned makes this oath, in due form of law and under the penalties of perjury, that the following is true to the best of my knowledge, information and belief, in accordance with Section 12-108(g)(3) of the Tax-Property Article of the Annotated Code of Maryland, as follows:

1.  That I am the original mortgagor of the Deed of Trust recorded in the  of the County of Montgomery, State of Maryland, in Book 33049, Page 032.

2.  That the mortgaged property is my principal residence.

3.  That the amount of unpaid principal of the original Deed of Trust being refinanced is $.00.

153,985.70

DATED this ___31st___ day of _____January_____, __2007__ .

_Patricia A Nash_
Patricia A. Nash

_____

State of Maryland, County of __Montgomery__

I HEREBY CERTIFY THAT on this 31st day of January, 2007, before me, the subscriber, a Notary Public of the jurisdiction aforesaid, personally appeared __Patricia A. Nash__, known to me (or satisfactorily proven) to be the person described in the foregoing instrument and made oath in due form of law, and under the penalties of perjury, that the matters and facts set forth herein are true.

As witness, my hand and notarial seal.

NOTARY PUBLIC
My Commission Expires: _____

**Michael Tadenev**
Notary Public
Howard County, Maryland
My Commission Expires Sept. 21, 2010

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LEK 33792, p. 0311. MSA_CE63_33749. Date available 02/14/2007. Printed 02/04/2015.

33792  312

## State of Maryland Land Instrument Intake Sheet

[   ] Baltimore City      [ X ] County: Montgomery

*Information provided is for the use of the Clerk's Office and State Department of Assessments and Taxation, and the County Finance Office only.*
(Type or Print in Black Ink Only All Copies Must be Legible)

( [   ] Check Box if Addendum Intake Form is Attached.)

| | | | | | | |
|---|---|---|---|---|---|---|
| **1** | **Type(s) of Instruments** | Deed | Mortgage | Other | Other | |
| | | 1 Deed of Trust | Lease | | | |
| **2** | **Conveyance Check Box** | Improved Sale | Unimproved Sale | Multiple | Y | Not an Arms- |
| | | Arms-Length *[1]* | Arms-Length *[2]* | Arms Length *[3]* | | Length Sale *[9]* |
| **3** | **Tax Exemptions** (if Applicable) | Recordation | | | | |
| | | State Transfer | | | | |
| | Cite or Explain Authority | County Transfer | | | | |

**4**

| | Consideration | Amount | Finance Office Use Only. |
|---|---|---|---|
| **Consideration and Tax Calculations** | Purchase Price/Consideration | $ .00 | **Transfer and Recordation Tax Consideration** |
| | Any New Mortgage | $ 417,000.00 | Transfer Tax Consideration $ |
| | Balance of Existing Mortgage | $ 372,827.11 | x ( ) % $ |
| | Other: | $ | Less Exemption Amount $ |
| | | | Total Transfer Tax $ |
| | Other: | $ | Recordation Tax Consideration $ |
| | | | x ( ) per $500 $ |
| | Full Cash Value | $ 0.00 | TOTAL DUE $ |

| | | Amount of Fees | | | |
|---|---|---|---|---|---|
| **5** | | | Doc. 1 | Doc. 2 | **Agent:** |
| | **Fees** | Recording Charge | $ 20.00 | $ | |
| | | Surcharge | $ 20.00 | $ | **Tax Bill:** |
| | | State Recordation Tax | $ 307.05 | $ | |
| | | State Transfer Tax | $ 0.00 | $ | **C.B. Credit:** |
| | | County Transfer Tax | $ 0.00 | $ | |
| | | Other | $ | $ | **Ag. Tax/Other:** |
| | | Other | $ | $ | |

| **6** | **Description of Property** | District | Property Tax No.(1) | Grantor Liber/Folio | Map | Parcel No. | Var. LOG |
|---|---|---|---|---|---|---|---|
| | | 01 | | | | | 1 (5) |

SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i).

| Subdivision Name | Lot (3a) | Block(3b) | Sect/AR(3c). | Plat Ref. | SqFt/Acreage(4) |
|---|---|---|---|---|---|
| Montgomere | 5 | | | | |

Location/Address of Property Being Conveyed (2)
8800 Laurel Valley Lane, Montgomery Village, MD 20886

Other Property Identifiers (if applicable)         Water Meter Account No.

Residential [ X ] or Non-Residential [   ]    Fee Simple [ X ] or Ground Rent [   ]    Amount: $N/A

Partial Conveyance? [   ] Yes [ X ] No   Description/Amt. of SqFt/Acreage Transferred:  N/A

If Partial Conveyance, List Improvements Conveyed: N/A

| **7** | | Doc. 1 – Grantor(s) Name(s) | Doc. 2 – Grantor(s) Name(s) |
|---|---|---|---|
| | **Transferred From** | Patricia A. Nash | |
| | | Doc. 1 - Owner(s) of Record, if Different from Grantor(s) | Doc. 2 - Owner(s) of Record, if Different from Grantor(s) |

| **8** | | Doc. 1 – Grantee(s) Name(s) | Doc. 2 – Grantee(s) Name(s) |
|---|---|---|---|
| | **Transferred To** | | |
| | | New Owner's (Grantee) Mailing Address | |
| | | 8800 Laurel Valley Lane, Montgomery Village, MD 20886 | |

| **9** | | Doc. 1 – Additional Names to be Indexed (Optional) | Doc. 2 - Additional Names to be Indexed (Optional) |
|---|---|---|---|
| | **Other Names to Be Indexed** | National City Mortgage Company a division | |

| **10** | | Instrument Submitted By or Contact Person | | |
|---|---|---|---|---|
| | **Contact/Mail Information** | Name: Michael Tadenev | | X Return to Contact Person |
| | | Firm: Peninsula Settlements, LLC | | |
| | | Address: 444 North Frederick Avenue Suite 316 Gaithersburg, MD 20877 | | Hold for Pickup |
| | | Phone: Telephone: 240-631-6690 Fax: 240-631-6556 | | |
| | | | | Return Address Provided |

**11 IMPORTANT:** *BOTH THE ORIGINAL DEED AND A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER*

| Assessment Information | X Yes | No | Will the property being conveyed be the grantee's principal residence? |
|---|---|---|---|
| | X Yes | X No | Does transfer include personal property? If yes, identify: |
| | X Yes | No | Was property surveyed? If yes, attach copy of survey (if recorded, no copy required) |

**Assessment Use Only - Do Not Write Below This Line**

[   ] Terminal Verification   [   ] Agricultural Verification   [   ] Whole   [   ] Part   [   ] Tran. Process Verification

| Transfer Number: | | Date Received: | Deed Reference: | Assigned Property No.: | |
|---|---|---|---|---|---|
| Year | | | Geo. | Map | Sub |
| Land | | | Zoning | Grid | Plat | Lot |
| Buildings | | | Use | Parcel | Section | Occ. Cd. |
| Total | | | Town Cd. | Ex. St. | Ex. Cd. | |

REMARKS:

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LE33792, p. 0312. MSA_CE63_33749. Date available 02/14/2007. Printed 02/04/2015.

BWW#191945

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| Carrie M. Ward, et al. | * | |
| 6003 Executive Blvd., Suite 101 | * | |
| Rockville, MD 20852 | * | |
|     Substitute Trustees | * | |
|     Plaintiffs | * | |
| vs. | * | Case No. |
| PATRICIA A. NASH | * | |
| 8800 Laurel Valley Lane | * | |
| Montgomery Village, MD 20886 | * | |
| | * | |
|     Defendant(s) | * | |
| * * * * * * * * | * | |

## AFFIDAVIT OF DEED OF TRUST DEBT AND RIGHT TO FORECLOSE

    Pursuant to Maryland Rule 14-207(b)(2), the undersigned does hereby affirm that, based upon the business records of the Noteholder/Servicer, the obligors under the promissory note secured by the Deed of Trust granted by Patricia A. Nash dated January 31, 2007, and recorded among the Land Records of Montgomery County, Maryland in Liber 33792, Folio 290, have defaulted under the terms thereof, and that the holder of the beneficial interest in said Deed of Trust has given proper notice of said default, that said default was not timely cured, that said holder has invoked the power of sale or assent to decree contained in said Deed of Trust. Thus, the Plaintiffs have the right to foreclose. Following is a statement of the debt remaining due and payable thereunder.

| | |
|---|---|
| Principal Balance Due | $369,922.41 |
| Interest at 6.12500% from 9/1/2014 to 2/4/2015 | $9,626.98 |
| Late Charges | $506.76 |
| | |
| Escrow Advance | $1,230.42 |
| | |
| | |
| Total amount due as of  2/4/2015 | $381,286.57 |
| Plus outstanding foreclosure fees and costs | |
| Per Diem: $62.08 | |

I solemnly affirm under the penalties of perjury that the contents of the foregoing Affidavit are true to the best of my knowledge, information and belief.

PNC Bank, NA

By: _____
Signature of Affiant

**Barbara Wacker**
_____
Printed Name of Affiant

**Authorized Signer**
_____
Affiant's Title

*April 23, 2015*
_____
Date

BWW#191945

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| Carrie M. Ward, et al. | * |
| 6003 Executive Blvd., Suite 101 | * |
| Rockville, MD 20852 | * |
|     Substitute Trustees | * |
|     Plaintiffs | * |
| vs. | *     Case No. |
| PATRICIA A. NASH | * |
| 8800 Laurel Valley Lane | * |
| Montgomery Village, MD 20886 | * |
| | * |
|     Defendant(s) | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**AFFIDAVIT CERTIFYING OWNERSHIP OF DEBT INSTRUMENT AND TRUTH AND ACCURACY OF COPY FILED HEREIN**

I HEREBY CERTIFY that Federal Home Loan Bank Cincinnati is the owner of the Note and that PNC Bank, NA is servicer for said owner and that the copy of the Note attached hereto is a true and accurate copy of the original debt instrument.

I solemnly affirm under the penalties of perjury that the contents of the foregoing Affidavit are true to the best of my knowledge, information and belief.

PNC Bank, NA

By: _Barbara Wacker_

Signature of Affiant

**Barbara Wacker**

Printed Name of Affiant

**Authorized Signer**

Affiant's Title

_April 23, 2015_

Date



NOTE

January 31 , 2007                          GAITHERSBURG                          MD
|Date|                                        [City]                              [State]

8800 LAUREL VALLEY LANE, MONTGOMERY VILLAGE, Maryland 20886
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    417,000.00   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
**National City Mortgage a division of National City Bank**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    **6.125**   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   **1st**   day of each month beginning on   **March 1 , 2007**         . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   **February 1, 2037**    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   **National City Mortgage Co.**
**PO Box 533510, Atlanta, GA  30353-3510**               or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $    **2,533.74** .

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE  FIXED RATE NOTE** -Single  Family- **Fannie Mae/Freddie  Mac UNIFORM  INSTRUMENT**

Wolters Kluwer Financial Services
VMP ®-5N (2007).01
Page 1 of 3                              Initials:

Form 3200 1/01

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.00    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Form 3200 1/01
Initials: _____

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)     _____ (Seal)
PATRICIA A NASH              -Borrower                              -Borrower

PAY TO THE ORDER OF
NATIONAL CITY MORTGAGE
A SUBSIDIARY OF NATIONAL CITY BANK          _____ (Seal)     _____ (Seal)
WITHOUT RECOURSE                              -Borrower                              -Borrower
NATIONAL CITY MORTGAGE, A DIVISION OF

MELISSA JORDAN
LOAN REVIEW ADMINISTRATOR

_____ (Seal)     PAY TO THE ORDER OF         _____ (Seal)
                         -Borrower   NATIONAL CITY MORTGAGE CO              -Borrower
                                     A SUBSIDIARY OF NATIONAL CITY BANK
                                     WITHOUT RECOURSE
                                     NATIONAL CITY MORTGAGE, A DIVISION OF
                                     NATIONAL CITY BANK
PAY TO THE ORDER OF
NATIONAL CITY BANK                   TERRY L BADER
WITHOUT RECOURSE                     LOAN REVIEW ADMINISTRATOR
NATIONAL CITY MORTGAGE CO            _____ (Seal)     _____ (Seal)
A SUBSIDIARY OF NATIONAL CITY BANK    -Borrower                              -Borrower

MELINDA JORDAN
LOAN REVIEW ADMINISTRATOR

                                     PAY TO THE ORDER OF

                                     WITHOUT RECOURSE            [Sign Original Only]
                                     NATIONAL CITY BANK

                                     TERRY BENNETT-BADER
                                     DOCUMENT CUSTODY SPECIALIST

VMP ®-5N (0207).01                   Page 3 of 3                    Form 3200 1/01

BWW#191945

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| Carrie M. Ward, et al. | * | |
| 6003 Executive Blvd., Suite 101 | * | |
| Rockville, MD 20852 | * | |
|     Substitute Trustees | * | |
|     Plaintiffs | * | |
| vs. | * | Case No. |
| PATRICIA A. NASH | * | |
| 8800 Laurel Valley Lane | * | |
| Montgomery Village, MD  20886 | * | |
| | * | |
|     Defendant(s) | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*    \*

### AFFIDAVIT, PURSUANT TO MD RULE 14-207(b)(4) REGARDING COPY OF APPOINTMENT OF SUBSTITUTE TRUSTEE/ASSIGNMENT OF MORTGAGE

The undersigned Substitute Trustee, pursuant to Maryland Rule 14-207(b)(4), does hereby affirm, under the penalties of perjury, that filed herein is a true and accurate copy of the Appointment of Substitute Trustees/Assignment of Mortgage, the original of which has been, or now is being, submitted for recording among the Land Records of Montgomery County, Maryland.

The undersigned solemnly affirms under the penalties of perjury that the contents of the foregoing paper are true to the best of his or her knowledge, information and belief.

Respectfully submitted,

Date: ___5/20/2015___

Elizabeth C. Jones

6003 Executive Blvd., Suite 101
Rockville, MD  20852
Phone: (301) 961-6555
Fax: (301) 961-6545
Email: Courts@bww-law.com

AFTER RECORDING, PLEASE RETURN TO:

BWW Law Group, LLC
6003 Executive Blvd., Suite 101
Rockville, MD 20852

BWW#: 191945
TaxID: 01-02880083

## APPOINTMENT OF SUBSTITUTE TRUSTEES

WHEREAS, by a Deed of Trust dated January 31, 2007, and recorded among the Land Records of Montgomery County, Maryland in Liber 33792, Folio 290, Patricia A. Nash did grant and convey to Lawyers Title Realty Srvc Inc A Virginia Corp, Trustee(s), the real property described in said Deed of Trust to secure an indebtedness evidenced by a promissory note of the same date and also described in said Deed of Trust, and;

WHEREAS, under the terms of the Deed of Trust, the holder of the beneficial interest in the Deed of Trust may remove the trustee(s) and appoint successor trustee(s), and;

WHEREAS, PNC Bank, NA is the holder of the beneficial interest in the Deed of Trust by virtue of being the holder or agent of the holder of the Note secured by the aforementioned Deed of Trust.

NOW THEREFORE, by virtue of the authority granted in the aforementioned Deed of Trust the undersigned hereby appoints Carrie M. Ward, Howard N. Bierman, Jacob Geesing, Pratima Lele, Joshua Coleman, Richard R. Goldsmith, Jr., Ludeen McCartney-Green, Jason Kutcher, Elizabeth C. Jones and Nicholas Derdock as Substitute Trustees under the said Deed of Trust, any of whom may act independently, in the place and stead of the trustee(s) originally named therein or in place of any other trustee(s) who have heretofore been substituted for the originally name trustee(s), the said Substitute Trustees being vested with all of the right, title and interest and clothed with all the rights, power and privileges of the trustee(s) by the terms of said Deed of Trust and by applicable law.

**Property address: 8800 Laurel Valley Lane, Montgomery Village, MD 20886**

PNC Bank, NA

Name: _Bruce Trowman_

Title: _Authorized Signer_

Date: _4-3-15_

STATE OF __Ohio__ )
COUNTY OF __Montgomery__ ) ss.

On this _3rd_ day of _April_, 20_15_, before me, personally appeared _Bruce Trowman_, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to within the instrument and acknowledged that he/she/they executed the same for purposes therein contained.

Given under my hand and seal.

My Commission Expires: _April 5, 2017_

_Janice M Grill_
Notary Public

JANICE M. GRILL, NOTARY PUBLIC
COMM. EXP. APRIL 5, 2017
STATE OF OHIO

BWW#191945

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| Carrie M. Ward, et al. | * |
| 6003 Executive Blvd., Suite 101 | * |
| Rockville, MD 20852 | * |
|     Substitute Trustees | * |
|     Plaintiffs | * |
| vs. | *    Case No. |
| PATRICIA A. NASH | * |
| | |
| 8800 Laurel Valley Lane | * |
| Montgomery Village, MD  20886 | * |
| | * |
|     Defendant(s) | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*      *

## AFFIDAVIT PURSUANT TO SERVICEMEMBERS CIVIL RELIEF ACT

The undersigned Substitute Trustee hereby affirms that, based upon a review of a response to a military status request from the Department of Defense Manpower Data Center, Patricia A. Nash is not in the military service of the United States as defined by the Servicemembers Civil Relief Act.

The undersigned hereby solemnly affirms, under the penalties of perjury, that the contents of the foregoing Affidavit are true to the best of his or her knowledge, information and belief.

Respectfully submitted,

Date:   5/20/2015

Elizabeth C. Jones

6003 Executive Blvd., Suite 101
Rockville, MD  20852
Phone: (301) 961-6555
Fax: (301) 961-6545
Email: Courts@bww-law.com

Department of Defense Manpower Data Center

Results as of : May-20-2015 06:54:31 AM

SCRA 3.0



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

Last Name: <u>NASH</u>
First Name: <u>PATRICIA</u>
Middle Name: <u>A</u>
Active Duty Status As Of: <u>May-20-2015</u>

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individual's active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL: http://www.defenselink.mil/faq/pis/PC09SLDR.html. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

Certificate ID: 87QEC933F108O00

BWW#191945

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| Carrie M. Ward, et al. | * |
| 6003 Executive Blvd., Suite 101 | * |
| Rockville, MD 20852 | * |
|      Substitute Trustees | * |
|      Plaintiffs | * |
| vs. | *   Case No. |
| PATRICIA A. NASH | * |
| 8800 Laurel Valley Lane | * |
| Montgomery Village, MD  20886 | * |
| | * |
|      Defendant(s) | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*     \*

## Statement Regarding Occupancy Status, Loss Mitigation Affidavit and Prefile Mediation

The undersigned Substitute Trustee hereby states that the property that is the subject of this foreclosure action is ✓ is not _____ "residential property" as that term is defined by Maryland Code, Real Property, Section 7-105-1 and that;

**(A) according to the servicer of the loan, the occupancy status of the secured property is as follows:**

___✓___ **owner occupied**

_____ **not owner occupied**

_____ **unknown;**

**and,**

**(B) a Final Loss Mitigation Affidavit:**

_____ **is attached to this document**

___✓___ **is not attached to this document.**

**(C)  the secured party and the borrower have not elected to participate in prefile mediation.**

Respectfully submitted,

Date: ___5/20/2015___

_Elizabeth C. Jones_ (signature)

**Elizabeth C. Jones**

6003 Executive Blvd., Suite 101

Rockville, MD  20852

Phone: (301) 961-6555

Fax: (301) 961-6545

Email: Courts@bww-law.com

BWW#191945

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| Carrie M. Ward, et al. | * | |
| 6003 Executive Blvd., Suite 101 | * | |
| Rockville, MD 20852 | * | |
|      Substitute Trustees | * | |
|      Plaintiffs | * | |
| vs. | * | Case No. |
| PATRICIA A. NASH | * | |
| 8800 Laurel Valley Lane | * | |
| Montgomery Village, MD  20886 | * | |
| | * | |
|      Defendant(s) | * | |

*　　*　　*　　*　　*　　*　　*　　*　　*　　*

**AFFIDAVIT REGARDING MAILING AND**
**ACCURACY OF NOTICE OF INTENT TO FORECLOSE**

The undersigned Substitute Trustee hereby solemnly affirms as follows:

1. A Notice of Intent to Foreclose was sent on March 30, 2015 to the mortgagor or grantor, and to the record owner of the secured property, if different than the mortgagor or grantor, in the manner prescribed by Section 7-105.1(c)(2)(i) and (ii), i.e., by first class mail, and by certified mail, postage prepaid, return receipt requested, bearing a postmark from the United States Postal Service, and that a copy of said Notice of Intent to Foreclose was submitted electronically to the Commissioner of Financial Regulation, in accordance with Section 7-105.1(c)(3) and COMAR 09.03.12.02.

2. Based upon the business records of the servicer in this case, at the time the Notice of Intent to Foreclose was sent, the contents of the Notice of Intent to Foreclose were accurate.

I solemnly affirm under the penalties of perjury that the contents of the foregoing Affidavit are true to the best of my knowledge, information and belief.

Date: _____5/20/205_____　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　Elizabeth C. Jones

6003 Executive Blvd., Suite 101
Rockville, MD  20852
Phone: (301) 961-6555
Fax: (301) 961-6545
Email: Courts@bww-law.com

BWW#191945

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| Carrie M. Ward, et al. | * | |
| 6003 Executive Blvd., Suite 101 | * | |
| Rockville, MD 20852 | * | |
|     Substitute Trustees | * | |
|     Plaintiffs | * | |
| vs. | * | Case No. |
| PATRICIA A. NASH | * | |
| 8800 Laurel Valley Lane | * | |
| Montgomery Village, MD  20886 | * | |
| | * | |
|     Defendant(s) | * | |
| *  *  *  *  *  *  *  *  * | * | |

## AFFIDAVIT OF DEFAULT PURSUANT TO MARYLAND RP 7-105.1(e)(ii)(1) AND MD RULE 14-207(b)(8)

The undersigned, being of lawful age, solemnly affirms as follows:

1.    In the regular performance of my job functions, I have access to and am familiar with business records maintained by the noteholder/servicer, for the purpose of servicing mortgage loans.  These records (which include data compilations, electronically imaged documents, and others) are: (a) made at or near the time of the occurrence of the matters set forth by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records; and (b) kept as a regular practice and in the ordinary course of business.  In connection with making this Affidavit, I reviewed and relied on those business records concerning the loan which is the subject of this proceeding.

2.    The default under the Deed of Trust securing the Note which is the subject of this proceeding, occurred on October 02, 2014 when the defendant(s) did not tender the payment due on October 01, 2014.

BWW#: 191945

I solemnly affirm under the penalties of perjury that the contents of the foregoing Affidavit are true to the best of my knowledge, information and belief.

PNC Bank, NA

By: _____Barbara Wacker_____
Signature of Affiant

_____Barbara Wacker_____
Printed Name of Affiant

_____Authorized Signer_____
Affiant's Title

_____April 23, 2015_____
Date

## NOTICE OF INTENT TO FORECLOSE

[Owner-Occupied Property - Mortgage Loan Default - No Prefile Mediation Offer]
This Notice is Required by Maryland Law (Real Property Article, §7-105.1(c), Annotated Code of Maryland).

**YOU ARE AT RISK OF LOSING YOUR HOME TO FORECLOSURE.**
You have missed one or more payments on your mortgage loan or you are otherwise in default. If you do not bring the loan current, otherwise cure the default, or reach an agreement with your mortgage company to avoid foreclosure (such as a loan modification, repayment plan, or other alternative to foreclosure), a foreclosure action may be filed in court as early as 45 days from the post mark date of this Notice.

There may be options available to avoid foreclosure, but you must act immediately.
You should seek housing counseling services now.

**TO ACCESS FREE HOUSING COUNSELING SERVICES, CALL THE MARYLAND HOPE HOTLINE AT 1-877-462-7555 OR GO TO WWW.MDHOPE.ORG**

**Please follow the instructions that are outlined below.**

- Read this entire Notice carefully and act immediately.

- Contact Crystal Coleman at (888)224-4702 to discuss options available to avoid foreclosure.

- Complete the enclosed Loss Mitigation Application according to its instructions and include copies of all requested documents.

- Mail your completed Loss Mitigation Application and the accompanying documents using the addressed envelope provided.

- Keep a copy of your Loss Mitigation Application, accompanying documents, your mail receipt confirmation, and the date of mailing for your own record.

**If you have already sent a Loss Mitigation Application to your mortgage company, please call your mortgage company at the number above to confirm the status of your request.**

Beware of anyone offering to "save" your home or requesting an upfront fee before providing assistance. If you believe you have been a victim of a scam, please contact Maryland's office of the Commissioner of Financial Regulation by calling 410-230-6077 or visiting www.dllr.state.md.us/finance/. Free resources are available at the Maryland HOPE Hotline at 1-877-462-7555 or go to www.MDHOPE.org.

**Attached is a list of government and nonprofit foreclosure-related resources available to help you.**

If you have funds available to bring your loan current contact Crystal Coleman at (888)224-4702 before sending any money to your mortgage company. When you call, ask for the amount needed to reinstate your loan.

BWW#: 191945

## Notice of Intent to Foreclose

### The following is important about your mortgage loan:

| | |
|---|---|
| Date of Notice: | 3/30/2015 |
| Address of Property Subject to This Notice: | 8800 Laurel Valley Lane<br>Montgomery Village, MD 20886 |
| Name of Borrower(s) | Patricia A. Nash |
| Mailing Address of Borrower(s): | 8800 Laurel Valley Lane<br>Gaithersburg, MD 20886 |
| Name of Record Owner(s) (if different from Borrower(s)): | Scott Nash, PR for the Estate of Patricia Nash |
| Mailing Address of Record Owner(s): (if different from Borrower(s)) | N/A |
| Name of Secured Party:    Federal Home Loan Bank Cincinnati | |
| Telephone Number of Secured Party: | (800) 367-9305 |
| Name of Loan Servicer *(if different from Secured Party):* | PNC Bank, NA |
| Telephone Number of Servicer *(if applicable):* | (800) 367-9305 |
| Mortgage Loan Number: | ███████ |
| Lien Position (Indicate whether first or subordinate lien): | 1st |
| Date of Most Recent Loan Payment Received: | 8/25/2014 |
| Period to Which Most Recent Mortgage Loan Payment Was Applied: | 9/1/2014 |
| Date of Default: | 10/2/2014 |
| Total Amount Required to Cure Default as of the Date of this Notice: | $18,356.08 |

(If you wish to reinstate your loan by paying all past due payments and fees, please call the mortgage company and ask for the total amount required to cure the default and reinstate the loan.)

Your mortgage loan payment is currently 179 days past due and is in default.

| | |
|---|---|
| Name of Mortgage Lender (if applicable): | National City Mortgage a division of National City Bank |
| Maryland Mortgage Lender License Number (if applicable): | N/A |
| Name of Mortgage Loan Originator (if applicable): | N/A |
| Maryland Mortgage Loan Originator License Number (if applicable): | N/A |

NOTE: The data contained in this Notice of Intent to Foreclose is electronically filed with the Commissioner of Financial Regulation in accordance with COMAR 09.03.12.02.

**Addendum to Notice of Intent to Foreclose**

Failure to reinstate your loan by paying all sums due to bring the loan current within 45 days of the date of this notice may result in acceleration of the sums secured by the Deed of Trust and sale of the secured property.  You have the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense to acceleration and sale.  If you have been granted a discharge of this debt in a Bankruptcy proceeding or currently under the protection of the United States Bankruptcy Code , this Notice is not an attempt to collect the debt from you, but is merely notice of intent to foreclose if the default under the Deed of Trust is not resolved.


THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND ANY INFORMATION OBTAINED FROM YOUR COMMUNICATION REGARDING THIS NOTICE MAY BE USED FOR THAT PURPOSE.

# HOPE Housing Counselors Network

| ORGANIZATION | JURISDICTION | ZIP | PHONE NUMBER | WEB ADDRESS |
|---|---|---|---|---|
| Allegany County HRDC | Allegany | 21502 | 301-777-5970 | www.alleganyhrdc.org (http://www.alleganyhrdc.org) |
| Anne Arundel County Economic Opportunity Committee, Inc* | Anne Arundel | 21401 | 410-626-1900 | www.aaceoc.com (http://www.aaceoc.com) |
| Arundel Community Development Services, Inc. | Anne Arundel | 21401 | 410-222-7600 | www.acdsinc.org (http://www.acdsinc.org) |
| Belair Edison Neighborhoods, Inc. | Baltimore City | 21213 | 410-485-8422 | www.belair-edison.org (http://www.belair-edison.org) |
| Druid Heights Community Development Corp. | Baltimore City | 21217 | 410-523-1350 | www.druidheights.com (http://www.druidheights.com) |
| Garwyn Oaks Northwest Housing Resource Center | Baltimore City | 21216 | 410-947-0084 | www.go-northwesthrc.org (http://www.go-northwesthrc.org) |
| Neighborhood Housing Services of Baltimore | Baltimore City | 21231 | 410-327-1200 | www.nhsbaltimore.org (http://www.nhsbaltimore.org) |
| Park Heights Renaissance, Inc* | Baltimore City | 21215 | 410-664-4890 | www.phrmd.org (http://www.phrmd.org) |
| Southeast Community Development Corporation* | Baltimore City | 21224 | 410-342-3234 | www.southeastcdc.org (http://www.southeastcdc.org) |
| Comprehensive Housing Assistance, Inc. | Baltimore City and Baltimore County | 21209 | 410-466-1990 | www.chaibaltimore.org (http://www.chaibaltimore.org) |
| Diversified Housing Development, Inc. | Baltimore County | 21244 | 410-496-1214 | www.diversifiedhousing.org (http://www.diversifiedhousing.org) |
| Eastside Community Development Corporation | Baltimore County | 21224 | 410-284-9861 | www.eastsidecdc.org (http://www.eastsidecdc.org) |
| Cecil County Housing Agency | Cecil County | 21921 | 410-996-5245 | http://www.ccgov.org/dept_housing/ (http://www.ccgov.org/dept_housing/) |
| Delmarva Community Services, Inc | Eastern Shore | 21613 | 410-901-2991 | www.dcsdct.org (http://www.dcsdct.org) |
| Salisbury Neighborhood Housing Services | Eastern Shore | 21804 | 410-543-4626 | www.salisburynhs.org (http://www.salisburynhs.org) |
| Shore-Up!Inc. | Eastern Shore | 21804 | 410-749-1142 | www.shoreup.org (http://www.shoreup.org) |
| Maryland Rural Development Corp.** | Eastern Shore and Cecil County | 21639 | 410-275-1824 | www.mrdc.net (http://www.mrdc.net) |
| City of Frederick/Frederick CAA | Frederick | 21701 | 301-600-1506 | www.cityoffrederick.com/fcaa (http://www.cityoffrederick.com/fcaa) |
| Garrett County Community Action Committee | Garrett and Allegany | 21550 | 301-334-9431 | www.garrettcac.org (http://www.garrettcac.org) |
| Home Partnership, Inc. | Harford and Cecil | 21085 | 410-679-3200 | www.homepartnershipinc.org (http://www.homepartnershipinc.org) |
| Harford County Housing Agency | Harford County | 21014 | 410-638-3045 | http://www.harfordhousing.org/ (http://www.harfordhousing.org) |
| Asian American Homeownership Counseling | Howard, Montgomery and Prince George's | 20852 | 301-760-7636 | www.aa-hc.org (http://www.aa-hc.org) |
| Housing Initiative Partnership, Inc.* | Montgomery and Prince George's | 20782 | 301-699-3835 | www.hiphomes.org (http://www.hiphomes.org) |
| Centro de Apoyo Familiar (CAF) | Montgomery and Prince George's County | 20737 | 301-328-3292 | www.mycaf.org (http://www.mycaf.org) |
| Latino Economic Development Corporation* | Montgomery County | 20902 | 1-866-977-LEDC (5332) | www.ledcmetro.org (http://www.ledcmetro.org) |
| Greater Washington Urban League, Inc. | Prince George's County | 20009 | 301-985-3519 | http://www.gwul.org/ (http://www.gwul.org/) |
| HomeFree-USA* | Prince George's | 20782 | 301-891-8400 | www.homefreeusa.org (http://www.homefreeusa.org) |
| Kairos Development Corporation | Prince George's | 20746 | 301-899-1180 | www.kairosgroups.org (http://www.kairosgroups.org) |
| Sowing Empowerment and Economic Development* | Prince George's | 20737 | 301-458-9808 | www.seedinc.org (http://www.seedinc.org) |
| United Communities Against Poverty | Prince George's | 20731 | 301-322-5700 | www.ucappac.org (http://www.ucappac.org) |
| Housing Options and Planning Enterprises, Inc.* | Prince George's and Charles | 20745 | 301-567-3330 | www.hopefinancial.org (http://www.hopefinancial.org) |
| Unity Economic Development Corporation | Prince George's and Charles | 20613 | 301-505-0331 | www.unityedc.org (http://www.unityedc.org) |
| Housing Counseling Services (HCS) | Prince George's County | 20009 | 202-667-7006 | http://housingetc.org (http://housingetc.org) |
| Lydia's House in Southeast | Prince George's County | 20774 | 301-322-5353 | http://www.lydiashousendc.org/ (http://www.lydiashousendc.org/) |
| Southern Maryland Tri-County CAC | Southern Maryland | 20637 | 301-274-4474 | www.smtccac.org (http://www.smtccac.org) |
| Consumer Credit Counseling Service of Maryland and Delaware, Inc. | Statewide | 21228 (Main Office) 8 other offices | 1-800-642-2227 | www.cccs-inc.org (http://www.cccs-inc.org) |
| St. Ambrose Housing Aid Center, Inc. | Statewide | 21218 | 410-366-8550 x235 | www.stambros.org (http://www.stambros.org) |
| Springboard Consumer Credit Management, Inc. | Statewide | 20817 | 1-877-947-3752 | http://springboard.org/ (http://springboard.org/) |
| Hagerstown Neighborhood Development Corp. | Washington | 21740 | 301-797-0900 | www.hagerstownhomestore.org (http://www.hagerstownhomestore.org) |
| Washington County Community Action Committee | Washington | 21740 | 301-797-4161 | www.wccac.org (http://www.wccac.org) |

# THE MARYLAND
# FORECLOSURE PROCESS AND TIME LINE
### [Owner-Occupied - Mortgage Loan Default - No Offer of Prefile Mediation]

**A Notice of Intent to Foreclose** is enclosed with this document. In this Notice you will find specific information about your mortgage, an application for loss mitigation, and instructions to complete the application. **THIS IS NOT YET A FORECLOSURE FILING.** A foreclosure action, called an order to docket or complaint to foreclose (the "OTD"), may not be filed against you in court until at least 45 days after this Notice was mailed. The OTD must be filed in Circuit Court in order to move forward with foreclosure proceedings.

The OTD cannot be filed until your loan is 120 days past due, and you have been sent this Notice.

You will receive a copy of the OTD and it will include one of the following affidavits:

1. **Preliminary Loss Mitigation Affidavit, which** will be filed with the OTD if the mortgage company has not started or completed the review of your loan for foreclosure alternatives known as loss mitigation. An application for loss mitigation will be included in the OTD. **Complete and return the application immediately;** OR

2. **Final Loss Mitigation Affidavit, which** will be filed with the OTD if the mortgage company believes it has no available alternatives to foreclosure. This affidavit will come with a **"Request for Postfile Foreclosure Mediation," an application, and instructions. You have only 25 days to request foreclosure mediation after the mailing date of these documents.** To request foreclosure mediation you must send the completed application with a non-refundable fee of $50 to the Circuit Court.

* If your order to docket includes a Preliminary Loss Mitigation Affidavit, **open all future mail** because you may receive a Final Loss Mitigation Affidavit in as soon as 28 days.

### Foreclosure Mediation:
You will have the opportunity to request foreclosure mediation after you receive the Final Loss Mitigation Affidavit. Foreclosure mediation is a process that allows you, a representative from your mortgage company, and a neutral third party mediator from the Maryland Office of Administrative Hearings to meet and discuss alternatives to foreclosure. The goal of foreclosure mediation is to help you avoid foreclosure. At mediation, you and your mortgage company may agree to an option to avoid foreclosure. However, making a request for foreclosure mediation does not guarantee a loan modification or other relief.

### TO ACCESS FREE HOUSING COUNSELING SERVICES,
### CALL THE MARYLAND HOPE HOTLINE AT
### 1-877-462-7555 OR GO TO WWW.MDHOPE.ORG


**LEADING THE WAY**

## Homeowner's Information Packet
### *for PNC Mortgage Customers*

As your mortgage loan servicer, we want you to know there is a program available that may help you. If you qualify under the federal government's Home Affordable Modification program and comply with the terms of the Home Affordable Modification Program Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure.

The modification may involve some or all of the following changes to your mortgage loan:
1) Bringing your account current;
2) Reducing the interest rate on your loan;
3) Extending the term of the loan, and
4) Delaying your payment of a portion of the mortgage principal until the end of the loan term.

How can you find out if you qualify? Just follow the steps below and let us know that you need help, TODAY!

**STEP 1**   **GATHER THE INFO WE NEED TO HELP YOU**

- Explain the financial hardship that makes it difficult for you to pay your mortgage loan using the **MHA Request for Modification and Affidavit (RMA) form (enclosed) completed and signed by all borrowers.**
- Submit the required documentation of your income.
- Make timely monthly trial-period payments.

If you meet the eligibility criteria, you will be offered a Trial Period Plan. The monthly trial period payments will be based on the income documentation that you provide. They will be an estimate of what your payment will be if we are able to modify your loan under the terms of the program.

If you do not qualify for a loan modification, we will work with you to explore other options available to help you keep your home or ease your transition to a new home.

**STEP 2**   **COMPLETE AND SUBMIT**

Please complete the enclosed forms and submit all the required income documentation. Please take the steps outlined on the enclosed document "Complete Your Checklist." If you have any questions, please contact us at (866) 804-7257.

Sincerely,

CUSTOMER SERVICE DEPARTMENT

The *Making Home Affordable* program was created to help millions of homeowners refinance or modify their mortgages. As part of this program the owner of your loan, your servicer, and the Federal Government are working to offer you options to help you stay in your home.

Attachments: Complete Your Checklist, RMA and IRS Form 4506-T.


**LEADING THE WAY**

| **IMPORTANT NOTICE** | **We want to help you avoid foreclosure scams** |

---

### Beware of Foreclosure Rescue Scams.  Help is free!

- There is never a fee to get assistance or information about the Making Home Affordable program from your lender or a HUD-approved housing counselor.
    - For a HUD-approved counselor, visit:  http://www.hud.gov/offices/hsg/sfh/hcc/fc/
- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan.
- Beware of anyone who says they can "save" your home if you sign or transfer over the deed to your house.  Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.
- Never make your mortgage payments to anyone other than your mortgage company without their approval.

---

**Homeowner's HOPE™ Hotline**

If you have questions about the program that your servicer cannot answer or need further counseling, call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673).  The Hotline can help with questions about the program and offers access to free HUD-certified counseling services in English and Spanish.



If you are aware of fraud, waste, mismanagement, or misrepresentations affiliated with the Troubled Asset Relief Program, please contact SIGTARP at 1-877-SIG-2009 (toll-free), 202-622-4559 (fax), or www.sigtarp.gov. Mail can be sent to Hotline Office of the Special Inspector General for Troubled Asset Relief Program, 1801 L St. NW, Washington, DC 20220.





**COMPLETE YOUR CHECKLIST**    This is the information we need to help you to modify your mortgage payments.

To see if you qualify for this program, fax to (937) 910-4009 or mail the items listed below to:

> **Attention:  Central Receipts – HAMP Bldg 7 – B6-YM10-01-1;**
> **PNC Mortgage**
> **3232 Newmark Drive**
> **Miamisburg OH  45342**

☐   1. **The enclosed MHA Request for Modification & Affidavit (RMA)** form completed and signed by all borrowers, **AND**

☐   2. **Signed and dated copy of the enclosed IRS Form 4506-T** (Request for Transcript of Tax Return) for each borrower (borrowers who filed their tax returns jointly may send in one IRS Form 4506-T signed and dated by both of the joint filers), **AND**

☐   3. **Documentation that will be used by us to verify the income of each borrower.** This documentation includes:

> **For borrowers who are current on their mortgage payments.**
>> ☐   Copy of the most recently filed signed federal tax return with all schedules, including Schedule E—Supplemental Income and Loss.
>
> **For each borrower who receives a salary or hourly wages:**
>> ☐   Copy of your two most recent pay stubs that show year-to-date earnings.
>
> **For each borrower who is self-employed:**
>> ☐   Most recent quarterly or year-to-date profit/loss statement.
>
> **For each borrower who receives other earned income (e.g. overtime, bonus, commission, fee, housing allowance, tips).**
>> ☐   Reliable third party documentation describing the nature of the income (e.g. an employment contract or printouts documenting tip income.)
>
> **For each borrower who has income such as social security, disability or death benefits, pension, adoption assistance, or public assistance:**
>> ☐   Copy of benefits statement or letter from the provider that states the amount, frequency and duration of the benefit, **AND**
>> ☐   Copy of two most recent bank statements showing receipt of such payment.
>
> **For each borrower who has unemployment income.**
>> ☐   Copy of benefits statement or letter from the provider that states the amount, frequency, and duration of the benefit (may be evidenced by a print out from the Department of Labor UI Benefit tool, which is available at http://www.ows.doleta.gov/unemploy/ben_entitle.asp.) **AND**
>> ☐   Copy of two most recent bank statements showing receipt of such payment.
>
> **For each borrower who is relying on alimony or child support as qualifying income*:**
>> ☐   Copy of divorce or other court decree; or separation agreement or other written agreement filed with the court that states the amount and period of time over which it will be received, **AND**
>> ☐   Two most recent bank statements showing receipt of such payment.
>
> **For each borrower who has rental income:**
>> ☐   Copy of the most recently filed signed federal tax return with all schedules, including Schedule E—Supplemental Income and Loss.

> *You are not required to disclose Child Support, Alimony or Separation Maintenance income, unless you choose to have it considered by your servicer.*

If you have other types of income, cannot locate the required documents, or have questions about the paperwork required, please contact us at (866) 804-7257.
**_Keep a copy of all documents for your records. Don't send original income documentation._**

**Making Home Affordable Program**
**Request For Modification and Affidavit (RMA)**

 MAKING HOME AFFORDABLE.gov

| REQUEST FOR MODIFICATION AND AFFIDAVIT (RMA)  page 1 | COMPLETE ALL THREE PAGES OF THIS FORM |

▶ Loan I.D. Number_____     ▶ Servicer _____

| BORROWER | CO-BORROWER |
|---|---|
| Borrower's name | Co-borrower's name |
| Social Security number          Date of birth | Social Security number          Date of birth |
| Home phone number with area code | Home phone number with area code |
| Cell or work number with area code | Cell or work number with area code |

| I want to: | ☐ Keep the Property | ☐ Sell the Property | |
|---|---|---|---|
| The property is my: | ☐ Primary Residence | ☐ Second Home | ☐ Investment |
| The property is: | ☐ Owner Occupied | ☐ Renter Occupied | ☐ Vacant |

Mailing address

Property address (if same as mailing address, just write same)          E-mail address

| | |
|---|---|
| Is the property listed for sale? ☐ Yes ☐ No<br>Have you received an offer on the property? ☐ Yes ☐ No<br>Date of offer_____ Amount of offer $_____<br>Agent's Name: _____<br>Agent's Phone Number: _____<br>For Sale by Owner? ☐ Yes ☐ No | Have you contacted a credit-counseling agency for help ☐ Yes ☐ No<br>If yes, please complete the following:<br>Counselor's Name: _____<br>Agency Name: _____<br>Counselor's Phone Number: _____<br>Counselor's E-mail: _____ |
| Who pays the real estate tax bill on your property?<br>☐ I do  ☐ Lender does  ☐ Paid by condo or HOA<br>Are the taxes current? ☐ Yes ☐ No<br>Condominium or HOA Fees ☐ Yes ☐ No  $_____<br>Paid to: | Who pays the hazard insurance premium for your property?<br>☐ I do  ☐ Lender does  ☐ Paid by Condo or HOA<br>Is the policy current? ☐ Yes ☐ No<br>Name of Insurance Co.: _____<br>Insurance Co. Tel #: _____ |

Have you filed for bankruptcy? ☐ Yes ☐ No   If yes: ☐ Chapter 7 ☐ Chapter 13   Filing Date: _____
Has your bankruptcy been discharged? ☐ Yes ☐ No     Bankruptcy case number _____

Additional Liens/Mortgages or Judgments on this property:

| Lien Holder's Name/Servicer | Balance | Contact Number | Loan Number |
|---|---|---|---|
| | | | |
| | | | |

| HARDSHIP AFFIDAVIT |
|---|

**I (We) am/are requesting review under the Making Home Affordable program.**
**I am having difficulty making my monthly payment because of financial difficulties created by (check all that apply):**

| | |
|---|---|
| ☐ My household income has been reduced. For example: unemployment, underemployment, reduced pay or hours, decline in business earnings, death, disability or divorce of a borrower or co-borrower. | ☐ My monthly debt payments are excessive and I am overextended with my creditors. Debt includes credit cards, home equity or other debt. |
| ☐ My expenses have increased. For example: monthly mortgage payment reset, high medical or health care costs, uninsured losses, increased utilities or property taxes. | ☐ My cash reserves, including all liquid assets, are insufficient to maintain my current mortgage payment and cover basic living expenses at the same time. |

☐ Other:

Explanation (continue on back of page 3 if necessary): _____

_____

| REQUEST FOR MODIFICATION AND AFFIDAVIT (RMA)  page 2 | COMPLETE ALL THREE PAGES OF THIS FORM |
| --- | --- |

## INCOME/EXPENSES FOR HOUSEHOLD[1]

▶ Number of People in Household:

| Monthly Household Income | | Monthly Household Expenses/Debt | | Household Assets | |
| --- | --- | --- | --- | --- | --- |
| Monthly Gross Wages | $ | First Mortgage Payment | $ | Checking Account(s) | $ |
| Overtime | $ | Second Mortgage Payment | $ | Checking Account(s) | $ |
| Child Support / Alimony / Separation[2] | $ | Insurance | $ | Savings/ Money Market | $ |
| Social Security/SSDI | $ | Property Taxes | $ | CDs | $ |
| Other monthly income from pensions, annuities or retirement plans | $ | Credit Cards / Installment Loan(s) (total minimum payment per month) | $ | Stocks / Bonds | $ |
| Tips, commissions, bonus and self-employed income | $ | Alimony, child support payments | $ | Other Cash on Hand | $ |
| Rents Received | $ | Net Rental Expenses | $ | Other Real Estate (estimated value) | $ |
| Unemployment Income | $ | HOA/Condo Fees/Property Maintenance | $ | Other _____ | $ |
| Food Stamps/Welfare | $ | Car Payments | $ | Other _____ | $ |
| Other (investment income, royalties, interest, dividends etc.) | $ | Other _____ | $ | Do not include the value of life insurance or retirement plans when calculating assets (401k, pension funds, annuities, IRAs, Keogh plans, etc.) | |
| **Total (Gross Income)** | **$** | **Total Debt/Expenses** | **$** | **Total Assets** | **$** |

## INCOME MUST BE DOCUMENTED

[1]Include combined income and expenses from the borrower and co-borrower (if any). If you include income and expenses from a household member who is not a borrower, please specify using the back of this form if necessary.
[2]You are not required to disclose Child Support, Alimony or Separation Maintenance income, unless you choose to have it considered by your servicer.

## INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the federal government in order to monitor compliance with federal statutes that prohibit discrimination in housing. **You are not required to furnish this information, but are encouraged to do so. The law provides that a lender or servicer may not discriminate either on the basis of this information, or on whether you choose to furnish it.** If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, the lender or servicer is required to note the information on the basis of visual observation or surname if you have made this request for a loan modification in person. **If you do not wish to furnish the information, please check the box below.**

| BORROWER | ☐ I do not wish to furnish this information | CO-BORROWER | ☐ I do not wish to furnish this information |
| --- | --- | --- | --- |
| *Ethnicity:* | ☐ Hispanic or Latino<br>☐ Not Hispanic or Latino | *Ethnicity:* | ☐ Hispanic or Latino<br>☐ Not Hispanic or Latino |
| *Race:* | ☐ American Indian or Alaska Native<br>☐ Asian<br>☐ Black or African American<br>☐ Native Hawaiian or Other Pacific Islander<br>☐ White | *Race:* | ☐ American Indian or Alaska Native<br>☐ Asian<br>☐ Black or African American<br>☐ Native Hawaiian or Other Pacific Islander<br>☐ White |
| *Sex:* | ☐ Female<br>☐ Male | *Sex:* | ☐ Female<br>☐ Male |

| To be completed by interviewer | | Name/Address of Interviewer's Employer |
| --- | --- | --- |
| *This request was taken by:*<br>☐ Face-to-face interview<br>☐ Mail<br>☐ Telephone<br>☐ Internet | *Interviewer's Name (print or type) & ID Number*<br><br>*Interviewer's Signature          Date*<br><br>*Interviewer's Phone Number (include area code)* | |

**REQUEST FOR MODIFICATION AND AFFIDAVIT (RMA)** page 3        **COMPLETE ALL THREE PAGES OF THIS FORM**

### ACKNOWLEDGEMENT AND AGREEMENT

*In making this request for consideration under the Making Home Affordable Program, I certify under penalty of perjury:*

1. That all of the information in this document is truthful and the event(s) identified on page 1 is/are the reason that I need to request a modification of the terms of my mortgage loan, short sale or deed-in-lieu of foreclosure.

2. I understand that the Servicer, the U.S. Department of the Treasury, or their agents may investigate the accuracy of my statements and may require me to provide supporting documentation. I also understand that knowingly submitting false information may violate Federal law.

3. I understand the Servicer will pull a current credit report on all borrowers obligated on the Note.

4. I understand that if I have intentionally defaulted on my existing mortgage, engaged in fraud or misrepresented any fact(s) in connection with this document, the Servicer may cancel any Agreement under Making Home Affordable and may pursue foreclosure on my home.

5. That: my property is owner-occupied; I intend to reside in this property for the next twelve months; I have not received a condemnation notice; and there has been no change in the ownership of the Property since I signed the documents for the mortgage that I want to modify.

6. I am willing to provide all requested documents and to respond to all Servicer questions in a timely manner.

7. I understand that the Servicer will use the information in this document to evaluate my eligibility for a loan modification or short sale or deed-in-lieu of foreclosure, but the Servicer is not obligated to offer me assistance based solely on the statements in this document.

8. I am willing to commit to credit counseling if it is determined that my financial hardship is related to excessive debt.

9. I understand that the Servicer will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. I understand and consent to the disclosure of my personal information and the terms of any Making Home Affordable Agreement by Servicer to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Homeowner Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services in conjunction with Making Home Affordable; and (e) any HUD-certified housing counselor.

▶ _____          _____

Borrower Signature                                                                        Date

▶ _____          _____

Co-Borrower Signature                                                                    Date

**HOMEOWNER'S HOTLINE**

*If you have questions about this document or the modification process, please call your servicer.*

*If you have questions about the program that your servicer cannot answer or need further counseling, you can call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673). The Hotline can help with questions about the program and offers free HUD-certified counseling services in English and Spanish.*



888-995-HOPE™
Homeowner's HOPE™ Hotline

**NOTICE TO BORROWERS**

Be advised that by signing this document you understand that any documents and information you submit to your servicer in connection with the Making Home Affordable Program are under penalty of perjury. Any misstatement of material fact made in the completion of these documents including but not limited to misstatement regarding your occupancy in your home, hardship circumstances, and/or income, expenses, or assets will subject you to potential criminal investigation and prosecution for the following crimes: perjury, false statements, mail fraud, and wire fraud. The information contained in these documents is subject to examination and verification. Any potential misrepresentation will be referred to the appropriate law enforcement authority for investigation and prosecution. By signing this document you certify, represent and agree that: "Under penalty of perjury, all documents and information I have provided to Lender in connection with the Making Home Affordable Program, including the documents and information regarding my eligibility for the program, are true and correct."

If you are aware of fraud, waste, abuse, mismanagement or misrepresentations affiliated with the Troubled Asset Relief Program, please contact the SIGTARP Hotline by calling 1-877-SIG-2009 (toll free), 202-622-4559 (fax), or www.sigtarp.gov. Mail can be sent to Hotline Office of the Special Inspector General for Troubled Asset Relief Program, 1801 L St. NW, Washington, DC 20220.

Form **4506-T**

(Rev. January 2008)

Department of the Treasury
Internal Revenue Service

# Request for Transcript of Tax Return

▶ **Do not sign this form unless all applicable lines have been completed.**
**Read the instructions on page 2.**

▶ **Request may be rejected if the form is incomplete, illegible, or any required line was blank at the time of signature.**

OMB No. 1545-1872

**Tip:** Use Form 4506-T to order a transcript or other return information free of charge. See the product list below. You can also call 1-800-829-1040 to order a transcript. If you need a copy of your return, use **Form 4506**, Request for Copy of Tax Return. There is a fee to get a copy of your return.

| | |
|---|---|
| **1a** Name shown on tax return. If a joint return, enter the name shown first. | **1b** First social security number on tax return or employer identification number (see instructions) |
| **2a** If a joint return, enter spouse's name shown on tax return | **2b** Second social security number if joint tax return |

**3** Current name, address (including apt., room, or suite no.), city, state, and ZIP code

**4** Previous address shown on the last return filed if different from line 3

**5** If the transcript or tax information is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number. The IRS has no control over what the third party does with the tax information.

**Caution:** *DO NOT SIGN this form if a third party requires you to complete Form 4506-T, and lines 6 and 9 are blank.*

**6** **Transcript requested.** Enter the tax form number here (1040, 1065, 1120, etc.) and check the appropriate box below. Enter only one tax form number per request. ▶ _____

**a** **Return Transcript,** which includes most of the line items of a tax return as filed with the IRS. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120A, Form 1120H, Form 1120L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years. Most requests will be processed within 10 business days . . . . . . . . . . . . . . . . . . . . . . . . ☐

**b** **Account Transcript,** which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns. Most requests will be processed within 30 calendar days . . ☐

**c** **Record of Account,** which is a combination of line item information and later adjustments to the account. Available for current year and 3 prior tax years. Most requests will be processed within 30 calendar days . . . . . . . . . . . . . . . ☐

**7** **Verification of Nonfiling,** which is proof from the IRS that you **did not** file a return for the year. Most requests will be processed within 10 business days . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

**8** **Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript.** The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2006, filed in 2007, will not be available from the IRS until 2008. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213. Most requests will be processed within 45 days . . . . . ☐

**Caution:** *If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.*

**9** **Year or period requested.** Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than four years or periods, you must attach another Form 4506-T. For requests relating to quarterly tax returns, such as Form 941, you must enter each quarter or tax period separately.

____ / ____ / _____      ____ / ____ / _____      ____ / ____ / _____      ____ / ____ / _____

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, **either** husband or wife must sign. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-T on behalf of the taxpayer.

Telephone number of taxpayer on line 1a or 2a
(     )

**Sign Here**

▶ Signature (see instructions)                                    Date

▶ Title (if line 1a above is a corporation, partnership, estate, or trust)

▶ Spouse's signature                                             Date

For Privacy Act and Paperwork Reduction Act Notice, see page 2.          Cat. No. 37667N          Form **4506-T** (Rev. 1-2008)

Form 4506-T (Rev. 1-2008)

# General Instructions

**Purpose of form.** Use Form 4506-T to request tax return information. You can also designate a third party to receive the information. See line 5.

**Tip.** Use Form 4506, Request for Copy of Tax Return, to request copies of tax returns.

**Where to file.** Mail or fax Form 4506-T to the address below for the state you lived in, or the state your business was in, when that return was filed. There are two address charts: one for individual transcripts (Form 1040 series and Form W-2) and one for all other transcripts.

If you are requesting more than one transcript or other product and the chart below shows two different RAIVS teams, send your request to the team based on the address of your most recent return.

**Note.** *You can also call 1-800-829-1040 to request a transcript or get more information.*

## Chart for individual transcripts (Form 1040 series and Form W-2)

| If you filed an individual return and lived in: | Mail or fax to the "Internal Revenue Service" at: |
| --- | --- |
| District of Columbia, Maine, Maryland, Massachusetts, New Hampshire, New York, Vermont | RAIVS Team Stop 679 Andover, MA 05501 |
| | 978-247-9255 |
| Alabama, Delaware, Florida, Georgia, North Carolina, Rhode Island, South Carolina, Virginia | RAIVS Team P.O. Box 47-421 Stop 91 Doraville, GA 30362 |
| | 770-455-2335 |
| Kentucky, Louisiana, Mississippi, Tennessee, Texas, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team Stop 6716 AUSC Austin, TX 73301 |
| | 512-460-2272 |
| Alaska, Arizona, California, Colorado, Hawaii, Idaho, Iowa, Kansas, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Washington, Wisconsin, Wyoming | RAIVS Team Stop 37106 Fresno, CA 93888 |
| | 559-456-5876 |
| Arkansas, Connecticut, Illinois, Indiana, Michigan, Missouri, New Jersey, Ohio, Pennsylvania, West Virginia | RAIVS Team Stop 6705-B41 Kansas City, MO 64999 |
| | 816-292-6102 |

## Chart for all other transcripts

| If you lived in or your business was in: | Mail or fax to the "Internal Revenue Service" at: |
| --- | --- |
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Georgia, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah, Washington, Wyoming, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409 |
| | 801-620-6922 |
| Connecticut, Delaware, District of Columbia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia, Wisconsin | RAIVS Team P.O. Box 145500 Stop 2800 F Cincinnati, OH 45250 |
| | 859-669-3592 |

**Line 1b.** Enter your employer identification number (EIN) if your request relates to a business return. Otherwise, enter the first social security number (SSN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Line 6.** Enter only one tax form number per request.

**Signature and date.** Form 4506-T must be signed and dated by the taxpayer listed on line 1a or 2a. If you completed line 5 requesting the information be sent to a third party, the IRS must receive Form 4506-T within 60 days of the date signed by the taxpayer or it will be rejected.

*Individuals.* Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506-T exactly as your name appeared on the original return. If you changed your name, also sign your current name.

*Corporations.* Generally, Form 4506-T can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer.

*Partnerships.* Generally, Form 4506-T can be signed by any person who was a member of the partnership during any part of the tax period requested on line 9.

*All others.* See Internal Revenue Code section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the Letters Testamentary authorizing an individual to act for an estate.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. Sections 6103 and 6109 require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, and the District of Columbia for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-T will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form,** 10 min.; **Preparing the form,** 12 min.; and **Copying, assembling, and sending the form to the IRS,** 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-T simpler, we would be happy to hear from you. You can write to the Internal Revenue Service, Tax Products Coordinating Committee, SE:W:CAR:MP:T:T:SP, 1111 Constitution Ave. NW, IR-6526, Washington, DC 20224. Do not send the form to this address. Instead, see *Where to file* on this page.

BWW#191945

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| Carrie M. Ward, et al. | * | |
| 6003 Executive Blvd., Suite 101 | * | |
| Rockville, MD 20852 | * | |
|      Substitute Trustees | * | |
|      Plaintiffs | * | |
| vs. | * | Case No. |
| PATRICIA A. NASH | * | |
| 8800 Laurel Valley Lane | * | |
| Montgomery Village, MD  20886 | * | |
| | * | |
|      Defendant(s) | * | |
| *    *    *    *    *    *    *    *    * | * | |

## AFFIDAVIT OF MAILING OF NOTICE TO OCCUPANT(S)

The undersigned Substitute Trustee, pursuant to Maryland Rule 14-209, does hereby affirm that the Substitute Trustees caused to be mailed to 8800 Laurel Valley Lane, Montgomery Village, MD 20886, via first class mail, on or about the date this case was docketed, a notice substantially in the form set out in Real Property Article 7-105.9(b) addressed to "All Occupants." That notice was a separate document printed in at least 12 point type. Typed on the outside of the envelope in which the written notice was mailed, on the address side, were the words required by Maryland Code, RP Section 7-105.9(b)(3), typed or printed in the manner and size required by that Code section.

The undersigned solemnly affirms under the penalties of perjury that the contents of the foregoing paper are true to the best of his or her knowledge, information, and belief.

Respectfully submitted,

Date:  5/20/2015

Elizabeth C. Jones

6003 Executive Blvd., Suite 101
Rockville, MD  20852
Phone: (301) 961-6555
Fax: (301) 961-6545
Email: Courts@bww-law.com