IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **Scott Nash,** | ) |
| Plaintiff, | ) |
| v. | ) Case Number: 8:16-cv-02910-TDC |
| **PNC BANK, N.A. D/B/A PNC MORTGAGE** | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSITION
TO DEFENDANT PNC BANK, N.A.'S MOTION TO DISMISS**

COMES NOW, Scott Nash, Plaintiff, by and through undersigned counsel, and hereby files this Opposition to Defendant PNC Bank, N.A.'s ("Defendant") Motion to Dismiss and, in support thereof, state as follows:

BACKGROUND

For the sake of brevity, Plaintiff shall adopt and incorporate the facts and allegations contained within the Amended Complaint as if fully set forth herein.

Defendant offers a thee-page recitation of the history of the subject mortgage, its assignment to Defendant, the death of the mortgagor and Plaintiff's mother, Patricia Nash, the inevitable default on the loan thereafter, the foreclosure action, and Plaintiff's appeal of the loan modification denial.  Except for the last point, Plaintiff's Complaint does not bring any of these matters into question, and Plaintiff does not otherwise dispute the factual background as explained in Defendant's Motion to Dismiss.  Rather, Plaintiff disputes the characterization thereof.  That characterization is the crux of this case.

1

In sum, Plaintiff believed that he would qualify for a loan modification under the HAMP program. He applied for the same in an attempt to keep his late mother's home. Complaint at ¶¶ 9-10. After an exchange of documents, he was denied for the relief he sought. Complaint at ¶ 11. Plaintiff, through counsel, then sent a letter to Defendant seeking information relating to the guidelines that resulted in the denial of his request. Complaint at ¶ 12. Defendant's response to the appeal letter did not provide an answer to that question. Complaint at ¶ 13. Plaintiff brought suit in the District Court of Maryland as a result.

Defendant filed its motion to dismiss, largely suggesting that Plaintiff's Complaint was the result of having been declined for obtain a HAMP modification. It was not. At bottom, Plaintiff's Complaint does not take umbrage with the denial of his modification application, but with the fact that he did not receive the *information* that he sought in his appeal letter.

STANDARD OF REVIEW

When considering a motion to dismiss, the Court should accept as true all well-pleaded factual allegations and should view the complaint in the light most favorable to the plaintiff. *See De Sole v. United States*, 947 F.2d 1169, 1174 (4th Cir. 1991). When evaluating a motion to dismiss, the primary concern is that of plausibility: "a complaint must state a claim that is plausible on its face" and incorporate sufficient factual matter in support of the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The allegations in a complaint must give rise to an entitlement of relief.

ARGUMENT

Plaintiff's Complaint raises a single count for violations of RESPA. Defendant's Motion to Dismiss raises a number of challenges to that single count: that Plaintiff has no standing to bring suit for HAMP violations; that Plaintiff has failed to allege violations of Regulation X and RESPA; and that Plaintiff has not incurred damages. Plaintiff responds in turn.

I.   PLAINTIFF HAS STANDING TO BRING THE INSTANT COMPLAINT BECAUSE IT IS NOT PREMISED UPON A VIOLATION A HAMP, BUT UPON A VIOLATION OF REGULATION X AND RESPA.

Defendant argues that the Complaint "merely re-casts a claim under HAMP," and states that "Congress did not provide for any private cause of action under HAMP." Memorandum in Support of Motion to Dismiss at p. 7. Defendant provides a string of cases, none of which are from the Supreme Court or the Fourth Circuit Court of Appeals,[1] which all stand for the broad proposition that HAMP does not create a private right of action for a lender's failure to consider an application for, or grant, a loan modification. On this point, Defendant concludes that "the Complaint seeks to compel PNC to offer a HAMP modification, asserting that PNC is required to take action to 'convince' the Investor to waive its restrictions." Memorandum in Support of Motion to Dismiss at p. 8.

The Complaint does no such thing. Defendant's argument with respect to HAMP guidelines highlights the characterization error in the Motion to Dismiss. Nowhere in the Complaint does Plaintiff allege that PNC should be compelled to offer a modification; nowhere in the Complaint does Plaintiff allege that he is entitled to a modification under

---

[1] From this jurisdiction, Defendant includes only a single unreported opinion from this Court.

3

the HAMP program; and nowhere in the Complaint does Plaintiff allege that he was entitled to a HAMP modification.

Rather, the Complaint seeks statutory remediation based on Defendant's failure to provide information that was requested. As explained in Exhibit 2 to the Complaint, the Making Home Affordable ("MHA") handbook sets forth the obligations of loan servicers who participate in the HAMP program. Plaintiff was aware that, as a HAMP participant, Defendant would be governed by its requirements, one of which is that HAMP participants must maintain records that "show that the servicer made a reasonable effort to seek a waiver from the investor" of any applicable restrictions to a loan modification application. Defendant has not alleged that it is not a HAMP participant, and Plaintiff reasonably believed that this information was in Plaintiff's possession. The Complaint simply states that, when that information was requested, it was not provided in violation of a federal statute, resulting in damages. Plaintiff's damages, in turn, resulted from the inability to obtain information relevant to his decision as to whether to continue occupying and maintaining the property.

Because Plaintiff has adequately pleaded facts sufficient to sustain a RESPA claim, and because the Complaint is not based upon a perceived violation of the HAMP program, the Motion to Dismiss must be denied.

II.   PLAINTIFF HAS STATED A CLAIM FOR A VIOLATION OF RESPA BECAUSE THE PURPOSE OF RESPA AND OF REGULATION X IS TO PROVIDE HOMEOWNERS WITH THE INFORMATION THEY REQUEST, AND BECAUSE DEFENDANT FAILED TO DO SO.

Congress expressed that providing "greater and more timely information" to homeowners was among its chief purposes in enacting RESPA. 12 U.S.C. 2601(a). It is well-settled that

> When interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such construction as will carry into execution the will of the legislature...("The literal interpretation of the words of an act should not prevail if it creates a result contrary to the intention of the legislature").

*Carchman v. Nash*, 473 U.S. 716, 743 n. 11 (1985) (internal citations and quotations omitted).  Thus, despite citing specific code sections in the Complaint, the Court must take a liberal view of the pleadings so as to analyze the merits, rather than the technicalities.  *Lomartria v. Am. Auto. Ins. Co.*, 245 F. Supp. 124, 129 (D. Conn. 1965), *aff'd*, 371 F. 2d 50 (2d Cir. 1967).  This command of statutory interpretation requires a different result than what Defendant seeks because, taken together, RESPA and Regulation X are consumer protection rules and are more comprehensive than Defendant suggests.

Defendant correctly notes the specific limitations of the code sections cited in the Complaint; however, *Carchman* requires a deeper analysis of the statutes and regulations at hand.  Regulation X, which includes 12 C.F.R. §1024.41, also includes sections relating to error resolution and requests for information.  Section 1024.35 governing error resolution includes the "[f]ailure to provide accurate information to a borrower regarding loss mitigation options and foreclosure…" 12 U.S.C. § 1024.35(b)(7).  Section 1024.36 governs requests for information and, of note, provides that a qualified written request falls within the ambit of the Regulation mandating a response.

In moving to dismiss the Complaint, Defendant relies all too heavily upon the specific language of the loss mitigation portion of Regulation X cited in the Complaint.  As noted above, Plaintiff was aware that Defendant would have documentation available

to it that shows what reasonable efforts it took, if any, to overcome the investor's restriction upon offering a loan modification because Defendant is a HAMP participant. A comprehensive reading of the Complaint plainly reveals that the letter, which was styled as a Qualified Written Request and an appeal of Defendant's loan modification denial, also qualifies as a notice of error under 12 C.F.R. § 1024.35 and a request for information under 12 C.F.R. § 1024.36. For example, the requirements of an information request as set forth in 12 C.F.R. § 1024.36(a) were plainly satisfied in the appeal letter: a "written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." The thrust of the Complaint is that Defendant failed to respond to a written request for certain information – specifically, identifying what efforts Defendant took to convince the investor to waive its restrictions on loan modifications.

Likewise, Defendant's argument with respect to Plaintiff sending the letter to an improper address is unavailing. When taken as a whole, Regulation X offers a variety of avenues to challenge the action of a lender. While a lender may designate an exclusive address to receive QWRs, sending correspondence to an address designated for appeals must also suffice. Indeed, an appeal letter may also raise information requests or notices of error under different subsections of the regulation. There is no provision of Regulation X that states that each piece of correspondence must be discrete and insular, and to interpret the regulation as such would lead to the absurd result of requiring identical correspondences being sent multiple times to multiple locations (likely at the expense of the already distressed borrower).

Defendant relies upon several cases (the most persuasive of which is *Roth v. CitiMortgage Inc.*, 756 F. 3d 178 (2d Cir. 2014)) in support of the proposition that, if a QWR is not sent to the addressed designated by the lender, then it is not a QWR. This reliance is misplaced. *Roth* dealt with a lender who had "establish[ed] a separate and exclusive office and address for the receipt and handling of qualified written requests." *Id*. at 181 (quotations and citations omitted). Although the denial letter attached to the Complaint as Exhibit 1 provides an address at which Defendant offered to receive information requests, nothing in the language indicates that the address was exclusive. Moreover, the Denial Letter *does* provide a separate address in Miamisburg, Ohio for submitting an appeal of the loan modification denial, and it is undisputed that the appeal letter was sent to that address. As noted above, there is no reason that an appeal of a loan modification denial cannot also raise requests for information and, insofar as the information contained therein can be the same, so too must the address be for receipt of the correspondence. Should the Court find otherwise, homeowners would be left with the irrational obligation of having to send the same correspondence to multiple departments of the same lender.

Because Plaintiff has stated a claim for violations of RESPA based upon Defendant's failure to furnish information that had been requested, and because the letter was sent to the correct address, the Motion to Dismiss must be denied.

III. PLAINTIFF HAS ADEQUATELY PLEADED DAMAGES THAT WOULD ENTITLE HIM TO RELIEF.

Pursuant to 12 U.S.C. § 2605(f)(1)(A), a claimant who brings a cause of action under RESPA is entitled to any actual damages he sustained as a result of the defendant's conduct. *See Wirtz v. JPMorgan Chase Bank, N.A.*, ___ F. Supp. 3d ___, 2016 WL

7

2642999, slip op. at *5-6 (D. Minn., May 9, 2016) (sustaining actual damages claims for bank statements, late fees, and credit reports).  RESPA allows for statutory damages if the claimant demonstrates that the lender engaged in a pattern and practice of violations, and provides for the recovery of attorneys' fees for, among other things, attempting to obtain the information that was sought.  *See id*., slip op. at *6 (awarding statutory damages for a pattern of noncompliance and attorneys' fees for counsel's efforts "in connection with" the RESPA action).  Defendant argues that Plaintiff has failed to claim damages for three reasons.

First, Defendant argues that Plaintiff has not adequately pleaded a claim for damages because Plaintiff was obligated to maintain the property regardless of Defendant's conduct.  In so doing, Defendant relies upon two Maryland cases, *Balt. Gas & Elec. Co. v. Lane*, 338 Md. 34, 656 A.2d 307 (1995) and *Matthews v. Amberwood Assocs. Ltd. Pshp.*, 351 Md. 544, 719 A.2d 119 (1998), to support this proposition.

Defendant's reliance is misplaced.  Both *Lane* and *Matthews* were premises liability cases sounding in tort; they did not indicate any dispute based upon a contractual obligation to maintain property in a certain condition (as would the Deed of Trust in this case).  *Lane* concerned an injury to a child resulting from a spool of wire rolling over and crushing the child at a BGE construction site.  656 A.2d at 310.  The Maryland Court of Appeals applied a foreseeability analysis to find that that BGE was not entitled to summary judgment.  *Id*. at 316.  In citing *Lane*, however, Defendant ignores one palpable observation: "[w]hen an owner loses possession [of property] it is relief of the duties associated with possession.  Having lost its ability to control the property, a former possessor cannot possibly continue to keep the property safe for persons who come in

contact with it." *Id*. at 313.² *Matthews* addressed whether a landlord could be held liable for injuries to a third party caused by an animal owned by the tenant. There, the Maryland Court of Appeals held that a landlord could only be held liable where it (1) maintained control of animal regulations within the leased premises, and (2) had knowledge that the tenant kept a dangerous animal in violation of the regulations. 719 A.2d at 131-32.

The instant case does not concern injuries to a third party. The only duties to maintain the property that is owed to Defendant are those stated in the Deed of Trust. If Plaintiff fails to adhere to those contractual duties, Defendant's only remedy is to pursue a foreclosure, which it has already commenced in the Circuit Court for Montgomery County. As a result, the notion that Plaintiff has not incurred damages because he has a pre-existing duty to maintain the property is unavailing because he would have been free of those obligations had he decided to leave the property. He surely has a duty in tort to avoid creating hazardous conditions, but he has no duty to incur expenses maintaining the property once Plaintiff has elected to exercise its remedy of foreclosure.

Defendant next argues that its conduct was not the proximate cause of Plaintiff's damages. This argument ignores the plain allegations contained in paragraphs 26 and 27 of the Complaint, which the Court must accept as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As both parties have noted, Plaintiff's efforts to retain the property have included filing motions in the foreclosure case and communicating extensively with Defendant regarding loss mitigation options. Plaintiff alleges that, but for Defendant's refusal to provide the information sought, he would have abandoned his efforts to save

---

² Notably, *Lane* was overruled three years later in *Balt. Gas & Elec. Co. v. Flippo*, 348 Md. 680, 705 A.2d 1144 (1998).

the property and allowed it to pass to foreclosure, which would have obviated his efforts to stay the foreclosure and maintain the property.

Lastly, Defendant argues that that its conduct does not constitute a "pattern and practice" sufficient to sustain statutory damages under RESPA. Defendant again relies on non-binding authority to support its proposition. Just so, there is equally persuasive authority to support the proposition that Defendant did engage in a pattern and practice of noncompliance. *See Wirtz*, 2016 WL 2642999, slip op. at *5 (finding a pattern and practice of noncompliance where the plaintiff engaged an attorney to submit QWRs, which were replied to with references to previous correspondence that did not respond to the borrower's inquiry, and where the lender "repeatedly placed the burden to investigate on [the Plaintiff].").

Here, Plaintiff engaged counsel to apply for a modification, which was denied. He was then forced to inquire as to why he was denied and, in response, Defendant sent a response that did not answer the question that had been asked. Plaintiff was then forced to attempt to forestall the foreclosure process based upon Defendant's failure to respond to the inquiry, and subsequently brought this action in an effort to shed light on that which has previously been left in the dark: what efforts did Defendant engage in to persuade the investor to waive its loan modification restrictions?

Because Plaintiff has suffered actual damages, because those damages were proximately caused by Defendant's conduct, and because Defendant's conduct constitutes a pattern and practice of noncompliance, its Motion to Dismiss must be denied.

CONCLUSION

For the foregoing reasons, Plaintiff has successfully stated a cause of action for violations of RESPA.  This action is not premised upon an attempt to enforce a HAMP obligation, but rather an attempt to obtain the information relating to the HAMP obligation to which Plaintiff was entitled under Regulation X.  Defendant's failure to tender the same constitutes a violation of RESPA, and Plaintiff is entitled to recover for his damages incurred as a result thereof.

WHEREFORE, Defendant respectfully prays for an order:

a. Denying Defendant's Motion to Dismiss; and

b. Granting any other relief the Court deems just and proper.

Respectfully submitted,

/s/ Ellery Johannessen
_____

Ellery Johannessen, Esq.
Federal Bar No. 19054
GOITEIN LAW, LLC
4550 Montgomery Ave., Suite 760N
Bethesda, MD 20814
(571) 989-3917
ellery@goiteinlaw.com
Attorney for Plaintiff