# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| SCOTT NASH,<br><br>    Plaintiff,<br><br>v.<br><br>PNC BANK, N.A.,<br>*d/b/a PNC Mortgage*,<br><br>    Defendant. | Civil Action No. TDC-16-2910 |

## MEMORANDUM OPINION

After Plaintiff Scott Nash's mother passed away, the mortgage payments on her home lapsed. Nash, who lives in the home, sought a loan modification from Defendant PNC Bank ("PNC") in hopes of assuming the mortgage and finding a way to keep the property. PNC denied his application. Nash now brings this civil action against PNC, alleging that the explanation given for the denial of his loan modification was inadequate under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617 (2012), and its implementing regulations, known as Regulation X, 12 C.F.R. §§ 1024.1-1024.41 (2016). Pending before the Court is PNC's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Scott Nash's mother, Patricia Nash, owned real property located in Montgomery Village, Maryland (the "Property"). Patricia Nash passed away in September 2014, and Scott Nash ("Nash") was appointed the personal representative of her estate. The Property is encumbered by a Refinance Deed of Trust (the "Mortgage") in favor of PNC, which is the servicer of the

Mortgage. After Patricia Nash's death, payments on the Mortgage lapsed. PNC initiated foreclosure proceedings in the Circuit Court for Montgomery County, Maryland. *See Ward v. Nash*, No. 405281-V (Md. Dist. Ct. filed May 21, 2015). Nash is contesting the foreclosure.

On or about March 23, 2016, Nash, through counsel, submitted a loan modification application to PNC pursuant to, among other grounds, the Home Affordable Modification Program ("HAMP"). PNC confirmed receipt of the application on March 24, 2016. On or about April 22, 2016, PNC sent a letter to Nash requesting that he submit additional documentation by May 6, 2016. Nash, through counsel, submitted the additional paperwork on May 5, 2016. PNC acknowledged receipt of the documents the same day.

PNC denied Nash's loan modification application on June 3, 2016. The letter denying the application (the "Denial Letter"), which Nash attached to the Complaint, informed Nash that:

> [Y]our assignee or mortgage owner, FEDERAL HOME LOAN BANK CINCINNATI, cannot approve your request for assistance for the:
>
> - Making Home Affordable HAMP Modification because we service your loan on behalf of an investor or group of investors that has not given us the contractual authority to modify your loan for this alternative to foreclosure option.
> - Making Home Affordable HAMP Tier II Modification because we service your loan on behalf of an investor or group of investors that has not given us the contractual authority to modify your loan for this alternative to foreclosure option.

Compl. Ex. 1 at 3, ECF No. 2-1. The Denial Letter informed Nash that he could dispute the denial of the HAMP modifications by sending an email to MHA_inquiry@pncmortgage.com or submitting a request in writing to an address in Miamisburg, Ohio. According to the Denial Letter, certain other types of loan modifications and hardship assistance were unavailable to Nash for the same reason the HAMP modifications were denied. Other forms of relief were denied for a variety of reasons, including the amount of unpaid principal remaining, PNC's

inability to verify Nash's income "in conjunction with the assignee/mortgage owner or private mortgage insurance modification guidelines," Nash's failure to document a "temporary financial hardship that meets the guidelines set forth by the assignee/mortgage owner or private mortgage insurance company of your loan," and Nash's intent to retain the Property. *Id.* PNC informed Nash that he could appeal denials of the non-HAMP modifications and hardship assistance to a different office at the same address in Miamisburg, Ohio. It provided a third address, in Dayton, Ohio, to which Nash could send notice of errors in, or request information about, his account.

On June 14, 2016, Nash, through counsel, sent a letter to the address provided for disputing denial of the HAMP modifications (the "Appeal Letter"). The Appeal Letter, a copy of which was attached to the Complaint, purported to be both an appeal of the HAMP modification denial and a Qualified Written Request ("QWR") under RESPA, 12 U.S.C. § 2605(e). In the Appeal Letter, Nash stated that PNC "failed to identify and provide copies of" the restrictions that PNC claimed to have necessitated the denial of Nash's HAMP modification. Compl. Ex. 2 at 3, ECF No. 2-2. Asserting that HAMP guidelines require a servicer to identify what applicable servicing or investor guidelines "make it unfeasible" to evaluate an application for a HAMP modification, the Appeal Letter claimed that it was "inexplicable that, despite an obvious investor restriction, PNC still conducted the HAMP review only to deny the same." *Id.* The Appeal Letter noted that the Denial Letter did not report any efforts to convince Federal Home Loan Bank of Cincinnati ("FHLBC") to waive its restrictions, even though HAMP guidelines require a servicer to maintain records demonstrating that the servicer "made a reasonable effort to seek a waiver from the investor." *Id.*

On June 20, 2016, PNC transmitted a letter to Nash (the "Response Letter") stating that "an independent appeal review determined that the information provided in your complete Loss

3

Mitigation Application was correctly evaluated for a loan modification according to PNC rules and your investor-provided guidelines." Compl. Ex. 3 at 2, ECF No. 2-3. Nash's appeal was therefore denied. Nash filed suit in the Circuit Court for Montgomery County, alleging that PNC violated RESPA because (1) the substance of the Denial Letter and the Response Letter was inadequate; and (2) PNC failed to comply with the requirements for processing a QWR. After PNC removed the case to this Court, Nash filed the Amended Complaint that is the subject of the pending Motion to Dismiss.

## DISCUSSION

In its Motion to Dismiss, PNC asserts that Nash has failed to state a plausible claim for relief under RESPA because (1) Nash lacks standing because there is no private right of action under HAMP; (2) Nash has failed to state a claim under Regulation X because PNC's Denial Letter contained an adequate explanation for the denial of the HAMP loan modifications and did not have to identify the investor guidelines that barred consideration of such a modification; (3) the Appeal Letter does not constitute a Qualified Written Request within the meaning of RESPA and was not sent to the appropriate address; and (4) Nash has failed sufficiently to allege damages caused by the alleged violations.

Because a fair reading of the Amended Complaint does not support the conclusion that Nash is asserting a claim under HAMP directly, and establishes that Nash's claim arises under RESPA, PNC's standing argument fails. The Court addresses the remaining arguments in turn.

### I.  Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Courts are permitted to consider documents attached to a complaint "so long as they are integral to the complaint and authentic." *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). Accordingly, the Court considers the Denial Letter, the Appeal Letter, and the Response Letter, each of which was attached to the original Complaint and relied upon in the Amended Complaint and briefing on the Motion to Dismiss.

## II. 12 C.F.R. § 1024.41(d)

Congress enacted RESPA to protect consumers from "unnecessarily high settlement charges caused by certain abusive practices" in the real estate mortgage industry, and to ensure "that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process." 12 U.S.C. § 2601(a). RESPA's implementing regulations, which are codified at 12 C.F.R. §§ 1024.1 to 1024.41 and known as "Regulation X," *see* 12 C.F.R. § 1024.1, prescribe additional duties and responsibilities of mortgage servicers under RESPA. Under a provision of Regulation X entitled "Loss mitigation procedures," servicers of federally related mortgages must take certain steps when a borrower applies for loss mitigation measures, such as the loan modifications sought in this case. *See* 12 C.F.R. § 1024.41. As relevant here, "[i]f a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower," the servicer must

state in the required notice to the borrower "the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification and, if applicable, that the borrower was not evaluated on other criteria." *Id.* § 1024.41(d). A borrower may enforce violations of this provision through a private cause of action pursuant to 12 U.S.C. § 2605(f). 12 C.F.R. § 1024.41(a).

In notifying Nash that his HAMP loan modification application had been denied, PNC stated that FHLBC could not approve his request for a modification because "we service your loan on behalf of an investor or group of investors that has not given us the contractual authority to modify your loan for this alternative to foreclosure option." Compl. Ex. 1 at 3. After Nash appealed the decision, PNC confirmed that his application was evaluated "according to PNC rules and your investor-provided guidelines." Compl. Ex. 3 at 1. According to Nash, 12 C.F.R. § 1024.41 required PNC "to provide a substantive response to Plaintiff's loan modification application, and specifically, to identify investor restrictions that prohibit a loan modification." Am. Compl. ¶ 20. PNC contends that the Denial Letter adequately stated the "specific reason or reasons" for its decision to deny Nash's application for a HAMP modification, and that 12 C.F.R. § 1024.41 does not require a servicer to identify applicable investor restrictions that prohibit a loan modification.

Few courts have considered the scope of 12 C.F.R. § 1024.41(d) and what specifically must be provided to a borrower whose application for a loan modification is denied. Neither party has cited authority to direct the Court in determining whether the information included in the Denial Letter was sufficient. However, the Consumer Financial Protection Bureau ("CFPB") has released an "official Bureau interpretation" of 12 C.F.R. § 1024.41 that specifically addresses this question. *See* 12 C.F.R. Pt. 1024, Supp. I, § 41(d), cmt. 1. On February 14, 2013,

the CFPB issued "Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X)," a final rule that amended Regulation X to implement sections of the Dodd-Frank Wall Street Reform and Consumer Protection Act and included "a commentary that sets forth an official interpretation to the regulation." Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10696 (Feb. 14, 2013) [hereinafter, "Mortgage Servicing Rules"]. This commentary, published in the Code of Federal Regulations at 12 C.F.R. Pt. 1024, Supp. I, "is the primary vehicle by which the Bureau of Consumer Financial Protection issues official interpretations of Regulation X." 12 C.F.R. Pt. 1024, Supp. I, Intro., cmt. 1. In its official interpretation of 12 C.F.R. § 1024.41(d), the CFPB stated:

> If a trial or permanent loan modification option is denied because of a requirement of an owner or assignee of a mortgage loan, the specific reasons in the notice provided to the borrower must identify the owner or assignee of the mortgage loan and the requirement that is the basis of the denial. *A statement that the denial of a loan modification option is based on an investor requirement, without additional information specifically identifying the relevant investor or guarantor and the specific applicable requirement, is insufficient.*

12 C.F.R. Pt. 1024, Supp. I, § 41(d), cmt. 1 (emphasis added). In the Summary of the Rulemaking Process published in the Federal Register with the amendments to Regulation X and the official interpretations, the CFPB explained that the addition of this comment stemmed from its recognition of:

> the consumer frustration resulting from servicer statements that investor requirements or net present value tests bar a loan modification option when the proper application of such purported requirements or tests may or may not actually result in such a determination. To assist consumer understanding, and to effectuate the appeal process, the Bureau believes that servicers that deny a loan modification on the basis of an investor requirement or net present value model must provide additional detail to support such statements.

Mortgage Servicing Rules, 78 Fed. Reg. at 10830.

7

Although the CFPB's commentary is not binding authority, courts have found its official interpretations to be "highly persuasive" when they fill "a gap in the text of Section 1024.41 and squarely address[] the factual situation described in the Complaint." *He v. Ocwen Loan Servicing, LLC*, No. 15-CV-4575(JS)(AKT), 2016 WL 3892405, at *2 (E.D.N.Y. July 14, 2016) (relying on the official interpretations of 12 C.F.R. § 1024.41(c) and (g)); *see also Sutton v. CitiMortgage, Inc.*, --- F. Supp. 3d ---, No. 16-Civ-1778 (KPF), 2017 WL 122989, at *6, *11 (S.D.N.Y. Jan. 12, 2017) (relying on the official interpretations of 12 C.F.R. §§ 1024.35 and 1024.36 and 12 U.S.C. § 2605(k)(1)(C)); *Zaychick v. Bank of America, N.A.*, No. 9:15-CV-80336-ROSENBERG, 2015 WL 4538813, at *2 (S.D. Fla. July 27, 2015) (relying on official commentary to 12 C.F.R. §§ 1024.35 and 1024.36 found in the Amendments to the 2013 Mortgage Rules Under the Equal Credit Opportunity Act (Regulation B), Real Estate Settlement Procedures Act (Regulation X), and the Truth in Lending Act (Regulation Z), 78 Fed. Reg. 60382-01 (Oct. 1, 2013))). *Cf. Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 193 (4th Cir. 2009) (stating that an agency's interpretation of its own ambiguous regulation is "controlling unless plainly erroneous or inconsistent with the regulation" (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997))). One court has specifically relied on the CFPB's official interpretation of 12 C.F.R. § 1024.41(d) to allow a plaintiff to proceed with an amended complaint asserting the precise claim before this Court: that a servicer violated 12 C.F.R. 1024.41(d) by providing only a general explanation that a loan modification was denied based on a failure to meet investor guidelines. *In re Wiggins*, No. 12-26993 (JKS), 2016 WL 7115864, at *5 (Bankr. D.N.J. Dec. 6, 2016).

In light of the CFPB's guidance that the denial of a loan modification option based on an investor requirement is "insufficient" if it does not provide "the specific applicable requirement"

that was not met, the Court concludes that Nash has adequately alleged that the Denial Letter's explanation for denying his HAMP loan modification "may lack the specificity required by 12 C.F.R. 1024.41(d)." *See Wiggins*, 2016 WL 7115864, at *5. Accordingly, the Motion is denied as to the alleged violation of 12 C.F.R. § 1024.41(d).

### III. QWR

Asserting that his Appeal Letter constituted a QWR under RESPA, Nash claims that PNC failed to comply with RESPA's requirements for responding to a QWR. Under 12 U.S.C. § 2605, servicers of federally related mortgage loans owe to borrowers a duty to respond to QWRs seeking "information relating to the servicing of such loan." *Id.* § 2605(e). *See also id.* § 2602(1) (defining "federally related mortgage loan"). RESPA defines a QWR as a written correspondence that "includes, or otherwise enables the servicer to identify, the name and account of the borrower" and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* § 2605(e)(1)(B). Within 30 days of its receipt of a QWR, the servicer must conduct an appropriate investigation, take any necessary action, such as making appropriate corrections to the borrower's account, and provide a written response to the borrower providing any requested information, describing any corrections made, or explaining its reasons for failing to do so. *Id.* § 2605(e). A servicer that fails to comply with § 2605(e) (or any provision of § 2605) is liable for actual damages and, upon a finding of a "pattern or practice" of noncompliance by the servicer, up to $2,000 in statutory damages. *Id.* § 2605(f).

PNC argues that (1) the Appeal Letter did not qualify as a QWR because its substance did not concern the servicing of the Mortgage and (2) PNC had no obligation to respond to the

Appeal Letter because it was not sent to the address PNC designated for receipt of QWRs. Nash argues that, in light of RESPA's broad consumer protection goals, the Court should view as a QWR his request for information about the denial of the loan modification, such as details on PNC's efforts to convince FHLBC to approve a loan modification. Nash further contends that even if the letter was not sent to PNC's address for receiving QWRs, the requirement that QWRs be directed to a specific address is irrational because it forces borrowers seeking to address different issues arising from the same servicer action, such as filing an appeal and requesting information, to send multiple, identical letters to different addresses.

The Court agrees with PNC that Nash's request for information relating to the denial of his HAMP loan modification application, including his request for a description of steps taken to convince FHLBC to approve a loan modification, was not a QWR within the meaning of RESPA, such that PNC was not required to provide a response that complied with the requirements of 12 U.S.C. § 2605(e). Section 2605(e) requires servicers to respond to QWRs seeking information "relating to the servicing of" the borrower's mortgage. 12 U.S.C. 2605(e)(1)(A). "Servicing" is defined in RESPA as:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

*Id.* § 2605(i)(3). Courts have repeatedly held that requests for information related to loan modifications do not concern "servicing" and therefore are not QWRs. *See, e.g., Sirote v. BBVA Compass Bank*, 857 F. Supp. 2d 1213, 1221-22 (N.D. Ala. 2010) ("Courts routinely interpret section 2605 as requiring a QWR to relate to the *servicing* of a loan, rather than the *creation* or *modification* of a loan." (quoting *Gates v. Wachovia Mortg., FSB*, No. 2:09-cv-02464-FCD/EFB,

2010 WL 2606511, at *3 (E.D. Cal. June 28, 2010))), *aff'd*, 462 F. App'x 888 (11th Cir. 2012); *see also Hudgins v. Seterus, Inc.*, 192 F. Supp. 3d 1343, 1349-51 (S.D. Fla. 2016) (noting that "[a] number of courts have held that inquiries about a loan modification do not relate to 'servicing' within the meaning of § 2605" and holding the same); *Bullock v. Ocwen Loan Servicing*, No. PJM-14-3836, 2015 WL 5008773 at *10 (D. Md. Aug. 20, 2015) ("[A] request for information about loan modification does not constitute a QWR."); *Mbakpuo v. Wells Fargo Bank, N.A.*, No. RWT-13-2213, 2015 WL 4485504, at *7-8 (D. Md. July 21, 2015) (holding that a series of letters contending that Wells Fargo improperly denied the plaintiff's request for a HAMP modification were not QWRs); *Van Egmond v. Wells Fargo Home Mortg.*, No. SACV-12-0112, 2012 WL 1033281, at *4 (C.D. Cal. Mar. 21, 2012) (stating that the defendant was "not obligated" to respond to the plaintiff's requests for information concerning the denial of his loan modification application because they did not concern "servicing"). *Cf. Martini v. JPMorgan Chase Bank*, 634 F. App'x 159, 164 (6th Cir. 2015) ("Loan modification requests do not qualify as QWRs because they do not relate to the loan's servicing."). Consequently, PNC was not required to comply with the QWR requirements of § 2605(e) in responding to Nash's Appeal Letter requesting information about the denial of his loan modification application.

The comparatively broad language found in 12 C.F.R. § 1024.36(a), which addresses QWRs seeking information, does not alter this conclusion. That regulation states that a servicer shall provide a response to "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a). Nash argues that the Appeal Letter sought information "with respect to the borrower's mortgage loan," thus obligating PNC to respond

within the QWR requirements, even if the Appeal Letter did not concern "servicing" as required of a QWR under 12 U.S.C. § 2605(e). This argument fails because the language in a regulation cannot be read to broaden the scope of the statutory definition of "servicing" or to expand the types of requests for information constituting a QWR beyond those established by the statute. *See, e.g., Smallwood v. Bank of America, N.A.*, No. 1:15-cv-336, 2015 WL 7736876, at *7 n.13 (S.D. Ohio Dec. 1, 2015) (declining to read 12 C.F.R. § 1024.36 to expand the definition of "servicing" under RESPA). Accordingly, reference to 12 C.F.R. § 1024.36 cannot transform a request for information about a loan modification into a QWR. *Bracco v. PNC Mortgage*, No. 8:16-cv-1640-T-33TBM, 2016 WL 4507925, at *4 (M.D. Fla. Aug. 29, 2016) ("Regulation X's requirements governing a servicer's response to loss mitigation applications are found in § 1024.41, not § 1024.36(c)."); *Hudgins*, 192 F. Supp. 3d at 1351 (holding that a request for loan modification information does not suffice to bring a claim under RESPA "if premised on a failure to comply with § 1024.36(d)(2)(i)(B) of Regulation X"). Thus, 12 C.F.R. § 1024.36 did not mandate that PNC treat the Appeal Letter as a QWR and respond pursuant to the requirements of 12 U.S.C. § 2605(e).

Likewise, the Appeal Letter does not qualify as a "notice of error," a form of QWR described in 12 C.F.R. § 1024.35. That section imposes a duty upon servicers to respond to notices informing the servicer of particular specified categories of "covered errors." 12 C.F.R. § 1024.35(b). Upon receipt of a notice of a covered error, a servicer must investigate the borrower's assertions and provide a response within the specified time, which depends upon the nature of the alleged error. *See* 12 C.F.R. § 1024.35(e). Failure to comply with the requirements of 12 C.F.R. § 1024.35 is enforceable by private action under 12 U.S.C. 2605. *See Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1007 (11th Cir. 2016) (stating that there is a private

right of action to enforce 12 C.F.R. § 1024.35 under 12 U.S.C. § 2605). *But see Miller v. HSBC Bank U.S.A., N.A.*, No. 13-Civ-7500, 2015 WL 585589, at *11 (S.D.N.Y. Feb. 11, 2015) (stating that 12 C.F.R. § 1024.35 does not provide a private right of action for damages).

The "failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by 12 C.F.R. 1024.39," which identifies information that a servicer must provide to a delinquent borrower within 45 days of delinquency, is a form of covered error. *See* 12 C.F.R. 1024.35(b)(7). However, courts have held that a claim that a loss mitigation application was improperly denied, or that the information provided about such a denial was inadequate, is not a "covered error" under 12 C.F.R. § 1024.35(b). *See Sutton*, 2017 WL 122989, at *15 ("RESPA (through Regulation X) regulates many aspects of loss mitigation practices, but does not regulate the correctness of a loss mitigation decision, and certainly does not encompass errors in loss mitigation decisions within the catch-all provision in the definition of 'covered errors.'"); *Farraj v. Seterus, Inc.*, No.15-cv-11878, 2015 WL 8608906, at *3-4 (E.D. Mich. Dec. 14, 2015) (holding that failure to provide the calculations leading to denial of a HAMP modification is not a "covered error" under 12 C.F.R. § 1024.35); *Wiggins v. Hudson City Sav. Bank*, No. 15-01938 (JKS), 2015 WL 4638452, at *8 (D.N.J. Bankr. Aug. 4, 2015) (holding that a claim that a borrower disagrees with a loan modification decision is not a "notice of error" under 12 C.F.R. 1024.35). If a borrower believes that the denial of a loan modification application is incorrect or that the information provided was insufficient, the remedy is to "challenge it by invoking the appeals process of § 1024.41(h)," just as Nash did, not by pursuing "the error resolution process of § 1024.35(b)." *Wiggins*, 2015 WL 4638452, at *8. Thus, Nash has failed to state a plausible claim that the Appeal Letter was a QWR asserting a "notice of

13

error" that required PNC to satisfy the specific requirements for responding to that form of QWR.

Finally, the Court considers PNC's alternative argument for dismissal of the QWR claim, that Nash did not mail the Appeal Letter to the address designated by PNC for QWRs. PNC notes that every page of the Denial Letter provides an address in Dayton, Ohio for a borrower to send a "written request/notice" to "request information or notify [PNC] of an error regarding your account." *See* Compl. Ex. 1. The Appeal Letter, however, reflects that it was sent to the separate address in Miamisburg, Ohio designated for disputes regarding loan modifications under the HAMP program.

By regulation, a servicer may "by written notice provided to a borrower, establish an address that a borrower must use to request information in accordance with the procedures in this section." 12 C.F.R. § 1024.36(b). The notice "shall include a statement that the borrower must use the established address to request information." *Id.* Based on this regulation, courts have held that where such an address has been designated for the receipt of QWRs, the failure to send a request for information to that address is fatal to a claim under RESPA. *See, e.g., Roth v. CitiMortgage, Inc.*, 756 F.3d 178, 181-82 (2d Cir. 2014); *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1149 (10th Cir. 2013). *Cf. Lupo v. JPMorgan Chase Bank, N.A.*, No. DKC-14-0475, 2015 WL 5714641, at *6 (D. Md. Sept. 28, 2015) (granting summary judgment to the defendant where the plaintiff failed to establish that the request for information was sent to the address designated for QWRs).

Unlike in those cases, however, neither the Amended Complaint nor the exhibits establish that PNC provided notice to Nash that he "must use the established address to request information." 12 C.F.R. § 1024.36(b). The purported notice of a designated QWR address

14

identified by PNC is the statement in the Denial Letter: "To request information or notify us of an error regarding your account, please send a written request/notice to: PNC Mortgage, P.O. Box 8807, Dayton, OH 45401-8807." Compl. Ex. 1 at 2. This statement did not explicitly identify this address as the designated address for borrowers to send QWRs within the meaning of RESPA. It in no way provided notice that a QWR must be sent to this address in order to qualify as a QWR. Such notice was particularly necessary where there were other addresses provided in the Denial Letter. By contrast, in *Roth*, the notice of a designated QWR address explicitly stated:

> PURSUANT TO § 6 OF RESPA, A "QUALIFIED WRITTEN REQUEST" REGARDING THE SERVICING OF YOUR LOAN MUST BE SENT TO THIS ADDRESS: CITIMORTGAGE, INC. ATTN: CUSTOMER RESEARCH TEAM, PO BOX 9442, GAITHERSBURG, MD 20898–9442. A "qualified written request" is written correspondence, other than notice on a payment coupon or statement, which includes your name, account number and the reason(s) for the request.

*Roth*, 756 F.3d at 182. Because PNC did not provide notice that all QWRs "must" be sent to the designated address, the failure to send the Appeal Letter to the Dayton, Ohio address does not disqualify it as a QWR. 12 C.F.R. 1024.36(b).

Nevertheless, because the Appeal Letter's request for information about Nash's loan modification denial did not relate to servicing and otherwise did not constitute a QWR in any form, the Court will dismiss Nash's RESPA claim arising from the alleged failure properly to respond to a QWR pursuant to 12 U.S.C. § 2605(e), 12 C.F.R. § 1024.36, or 12 C.F.R. § 1024.35.

**IV. Damages**

PNC further argues that Nash has failed to state a claim because he has not sufficiently pleaded damages, either actual damages caused by any alleged violation of RESPA or a "pattern

15

or practice" of noncompliance with RESPA that would warrant statutory damages. The Court agrees that Nash's claim that PNC sent a single allegedly deficient letter does not establish a "pattern or practice" of noncompliance. *See Bulmer v. MidFirst Bank, FSA*, 59 F. Supp. 3d 271, 279 (D. Mass. 2014) (holding that failure to respond to one QWR does not demonstrate a pattern or practice of noncompliance); *Galante v. Ocwen Loan Servicing, LLC*, No. ELH-13-1939, 2014 WL 3616354, at *34 (D. Md. July 18, 2014) (holding that the plaintiffs failed to "identify any actionable pattern or practice" where the complaint alleged a single instance of noncompliance).

With respect to actual damages, Nash has pled sufficient detail to state a claim under RESPA. Nash alleges damages of $7,000 consisting of expenses for "yard maintenance, electric and water bills, and other miscellaneous repairs" incurred during the time period when the inadequate explanation of the reason for the denial of his loan modification caused him to continue to maintain the Property under the false hope that a loan modification could be secured. Am. Compl. ¶¶ 26-27. Drawing all reasonable inferences in favor of Nash, as is required at the this stage of the proceedings, the Court finds that Nash has adequately alleged that PNC's failure to provide sufficient detail about the reasons for the denial caused him to incur these expenses. Courts have denied motions to dismiss based on considerably less detailed, more tenuous claims. *See Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 425 (6th Cir. 2014) (finding that plaintiffs adequately pleaded damages by stating that the defendant's alleged violation of RESPA caused "damages in an amount not yet ascertained, to be proven at trial"); *Bennett v. Bank of America, N.A.*, 126 F. Supp. 3d 871, 880-81 (E.D. Ky. 2015) (finding that the plaintiffs adequately alleged damages where the provision of inadequate information "hindered their ability to evaluate their past and present loss mitigation options based on the actual investor guidelines"); *Colonial Sav., FA v. Gulino*, No. CV-09-1635-PHX-GMS, 2010 WL 1996608, at

*7 (D. Ariz. May 19, 2010) (finding that the plaintiffs sufficiently alleged damages stemming from a violation of RESPA by claiming that the refusal to respond to requests for information "creates uncertainty as to the validity of the title to their property"). Accordingly, the Court will not dismiss the Complaint on this basis.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Motion is DENIED as to Nash's claim under 12 C.F.R. § 1024.41(d), as enforceable through 12 U.S.C. § 2605(f), that the Denial Letter provided inadequate information about the reason for the denial of his HAMP loan modification application.

The Motion is GRANTED as to Nash's claims that PNC violated the requirements for responding to a QWR under 12 U.S.C. § 2605(e), 12 C.F.R. § 1024.35, and 12 C.F.R. § 1024.36. A separate Order shall issue.

Date: April 20, 2017

THEODORE D. CHUANG
United States District Judge